[S. F. No. 1288.    Department One.—May 2, 1899.]

EDWARD GILL, Respondent, v. CITY OF OAKLAND, Appellant.

STREET ASSESSMENT—SECOND SUPPLEMENTAL ASSESSMENT—POWER OF COUNCIL.—Under the street opening act of 1889 (Stats. 1889, p. 70), where a deficiency has arisen in the collections under the original assessment for the opening and extension of a street, and a supplemental assessment to reimburse money advanced from the general fund to meet such deficiency, has proved insufficient for that purpose, the municipal council has authority, if the proceedings were regularly pursued, to make a second supplemental assessment to complete such reimbursement.

ID.—OBJECTIONS TO ASSESSMENT—NOTICE OF HEARING—STATED HOUR— PREMATURE ADJOURNMENT—LOSS OF JURISDICTION.—Where the time for the hearing of objection to the second supplemental assessment was fixed by the city council for the stated hour of 9:15 P. M. of a specified date, and notice was given of such hearing to the objectors, who attended at the hour designated; but, previously to that hour, without notice to the objectors, the meeting was adjourned until the next evening, the council thereby lost jurisdiction to consider the objections, or to make a valid assessment without giving a new notice to the objectors.

ID.—VOID ASSESSMENT—THREATENED SALE—PAYMENT UNDER PROTEST— RECOVERY FROM CITY.—Money paid under protest to the superintendent of streets to prevent a threatened sale and deed by him for a delinquent street assessment which is void, may be recovered back from the city irrespective of whether section 3819 of the Political Code applies to local assessments.

ID.—EFFECT OF DEED—CLOUD UPON TITLE—LOSS OF PROPERTY.—The deed of the superintendent of streets under a sale to enforce a street assessment is made *prima facie* evidence of the regularity of the proceedings, and conclusive evidence of the necessity of taking or damaging the lands taken or damaged and of the correctness of the compensation awarded therefor; and would cast a cloud upon the plaintiff's title and cut off his rights, if he had not paid the assessment or enjoined the sale.

ID.—LIABILITY OF CITY—ADVANCE TO STREET OPENING DISTRICT—CONTROL OF FUNDS.—The liability of the city to return money paid to the city treasurer which was illegally exacted from the plaintiff under a void street assessment, is not affected by the fact that money was advanced from the general fund to the street opening district, and that the assessment was for the purpose of reimbursing the general fund. The city council levies all street assessments, and retains the ·control of the funds from first to last, through its proper officers.

ID —PRESENTATION OF CLAIM TO COUNCIL.—NEGLECT TO ACT.—The plaintiff is not required to present any claim to the city council for the

money illegally exacted, before bringing an action to recover it back from the city; and where it appears that the claim was presented to the auditor and sent to the council, and there referred to a committee without action, the council cannot avoid suit thereupon by refusing or neglecting to act upon the claim.

ID.—SUFFICIENCY OF COMPLAINT—AUTHORITY OF STREET SUPERINTENDENT. A complaint stating all the proceedings of the council, and of the superintendent of streets up to the point of advertising the property for sale to pay the tax in question, and showing that the assessment was invalid, and that the tax was delinquent, and that payment was made under protest to prevent a threatened sale and deed by the superintendent of streets of plaintiff's property, sufficiently states a cause of action, without expressly averring that the superintendent of streets was clothed with authority to make the sale. The statute clothed him with authority to carry out his avowed purpose to sell.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion.

W. A. Dow, City Attorney, for Appellant.

J. H. Smith, for Respondent.

CHIPMAN, C.—Action to recover $2,405.20 alleged to have been paid by plaintiff to the street superintendent of defendant under protest, as an assessment in a street opening.

The city of Oakland by its council, in 1889, adopted a resolution of intention to open and extend Filbert street in said city between certain points. The proceedings were taken under the street opening act of 1889 (Stats. 1889, p. 70). No question arises as to the regularity of the proceedings and the collection of the assessment as originally levied. A deficiency occurred of $6,641.31 in the collections under the assessment, to meet which the council advanced this amount by transfer from the general fund of the city, pursuant to section 18 of the act, and upon condition that the general fund should be reimbursed out of a supplemental assessment thereafter to be made. Such supplemental assessment was duly made, and no question arises out of this supplemental assessment. But after the collection of the whole of this assessment there still remained a deficiency

in the street opening fund of $3,315.45 to meet the fund trans-
ferred from the general fund.  A second supplemental assess-
ment was ordered for the purpose of reimbursing the city in
full and to pay the expenses incident to the levy and collection
of such supplemental assessment.

The commissioners filed their report and second supplemental
assessment with said council, showing an assessment against
plaintiff of $2,405.20.  Plaintiff and others filed written objec-
tions to the confirmation of said report and assessment, which
objections were set down to be heard September 19, 1892, at
9:15 o'clock P. M., of which hearing plaintiff had due notice.
A question arises as to whether plaintiff was bound by the action
of the council at this and the meeting which followed the next
night.  The findings as to these two meetings are as follows:

"That at the time set for the hearing of his objections filed
to the report of the commissioners, as alleged in section XIV
of said amended complaint, there was no session of the said
council.  That some time prior on that night to the time set for
said hearing one member of said city council was present in
the council chamber of said council, together with the clerk of
said council, and then and there declared the meeting of said
council set for that night adjourned to a succeeding night, and
that said adjournment was then and there entered by the said
clerk upon the minutes of said council.  That said plaintiff
was not present at said adjournment.  That he had no notice
thereof, and was not present at said succeeding meeting and
had no notice thereof, and that at said succeeding meeting said
council took up said objections and passed upon them, without
sustaining them or any of them, and then and there confirmed
and adopted said report of said commissioners."

On the twenty-second day of September, 1892, the street su-
perintendent published the fact that he had received the assess-
ment-roll containing the assessment against plaintiff's property,
and notifying the public that the assessment would become de-
linquent if the assessments were not paid before the expiration
of thirty days thereafter; within five days after the expiration of
the time as above stated the said superintendent caused to be
published a notice that he would sell at public sale on November
19, 1892, all lands within said assessment district upon which

said second supplemental assessments were not paid, and for the purpose of paying the same; plaintiff's lots were included among the delinquents, whereupon, to avoid the sale, he paid the assessment under protest. The finding on this point is:

"That said plaintiff did, on the eighteenth day of November, 1892, pay to the said superintendent of streets the said sum ·of $2,405.20, and under protest, as alleged in section XVII of said amended complaint, and that he did pay the same to prevent his said lots of land from being sold for the nonpayment of said new supplemental assessment, and to prevent his title to said lots from being clouded."

Plaintiff had judgment, from which and from an order denying its motion for a new trial defendant appeals.

1. Appellant's first contention is that the second supplemental assessment was authorized. Respondent denies this and claims that the council exhausted its authority in making the first supplemental assessment. Section 20 of the act provides: "If . . . . there should be a deficiency . . . . or for any cause it appears desirable, the . . . . city council may order a supplemental assessment, and report the same in manner and form as the original, and subject to the same procedure." Section 25 reads: "The provisions of this act shall be liberally construed to promote the objects thereof." Without resort to this latter section we think a reasonable construction of the statute warranted the second supplemental assessment if the proceedings were regularly pursued. This seems to us too plain to call for argument.

2. It is objected by respondent, however, that the assessment was void, for the reason "that the plaintiff was deprived of his right to appear before the city council, at the hearing before it of his objections filed to the confirmation of the commissioners' report of their proceeding, in the second supplemental assessment."

The facts from which the finding above given was drawn are the following: The hearing of plaintiff's objections to the assessment, which he had duly filed with the city council, were set down for 9:15 P. M., September 19, 1892; the objections were that the council had no authority to make the assessment; that it was illegal and unequal; that the plaintiff's property was assessed higher in proportion to other property in said district,

and not in proportion to the benefits derived or damages suffered thereby; plaintiff went to the city hall, the place of meeting of the council, about 9 P. M. of the day fixed for the hearing; was there at the time fixed and remained from eight to ten minutes after the time so fixed. Plaintiff testified: "The front door to the main entrance of the building was locked and I could not get in the building. There were others there and could not get in at the same time. I remained until after the time set for the hearing and then left. I had no notice served upon me of an adjournment of the hearing of that evening to any other time. I was not present the next evening when my objections were taken up and passed upon by the council, and had no actual notice of the time the hearing was to be had or of the adjournment from the 19th to the 20th." He further testified: "During the office hours of September 20, 1892, I did not call at the city clerk's office, nor did I make any endeavor to ascertain anything in connection with the hearing of said objections, nor did anyone in my behalf." The minutes of the council show that a regular meeting was called to order by the clerk on September 19th (hour not given). Upon roll-call only one councilman (MacDonald) was present, and ten were entered absent. The minutes read: "There being no quorum present, Mr. MacDonald moved the council adjourn to meet Tuesday, September 20, 1892, at 8 P. M.. So ordered. The council then adjourned, by J. M. Brady, city clerk." The minutes of the meeting September 20th read: "An adjourned meeting of the Oakland city council was held on the above date." Upon roll-call seven members were found to be present and four absent. "The hour of 9:15 P. M. having arrived, it having been set as the time for hearing the protest of James Borland and others against confirming the new supplementary assessment for the opening of Filbert street, the president declared the said hearing in order." The minutes show the proceedings as to the protestants present and those "not appearing," among whom it is conceded was plaintiff, and that all objections were overruled. It will be observed that the adjournment of the 19th did not fix the hour for hearing plaintiff's objections on the 20th, so that an examination of the minutes would not have informed him at what hour to attend on the 20th.

The act requires the commissioners to file their report of the assessment with the clerk, and the clerk to give notice by publication of such filing requiring all interested persons to show cause why the report should not be confirmed, and the clerk must fix the day for the hearing, which must be stated in said notice. (Act of 1899, sec. 13.) Objections must be in writing and be filed with the clerk, "who shall, at the next meeting after the day fixed in the notice to show cause, lay the said objections, if any, before the city council, which shall fix a time for hearing the same, of which the clerk shall notify the objectors; . . . . and at such time . . . . shall proceed to pass upon such report," et cetera. (Act of 1889, sec. 14.)

It appears from the complaint and answer that Councilman MacDonald and Clerk Brady attended at the council chamber on September 19th, at the hour of 8 o'clock P. M., and adjourned the meeting, record of which has been stated above.

Had plaintiff notice of the adjourned meeting of September 20th? We do not think he had, and we are of the opinion that the proceedings were, therefore, as to him, unauthorized and void. The statute conferred the right to notice, without giving which the council could not pass upon his objections. (*Williams v. Bergin,* 108 Cal. 166; *Schwiesau v. Mahon,* 110 Cal. 543.) Upon the power to adjourn a meeting Mr. Dillon states the rule to be that "a regular meeting (which this appears to have been), unless special provision is made to the contrary, may adjourn to a future fixed day, and at such meeting it will be lawful to transact any business which might have been transacted at the stated meeting, of which it is, indeed, but the continuation." (Dillon on Municipal Corporations, 287.) The statute gave to plaintiff the right to be heard at the time and place noticed; he was not bound to attend at an earlier time. It is alleged and not denied, and is found by the court as the fact, that the time for hearing plaintiff's objections was fixed at a stated hour, and the court on sufficient evidence found that there was no session or meeting of the council at that hour. The only meeting held by the council on that day was more than one hour previous to the noticed hearing, and for what purpose it then met is not shown. It was, we suppose, a regular meeting, and may be conceded to have been called for regular business, but

the meeting to consider objections was called for the hour of
9:15, and we do not think that that business could have been
transacted at 8 P. M. in the absence and without the consent of
the parties interested; nor could the council at 8 P. M., without
notice to and without the consent and in the absence of such
interested parties, adjourn a hearing fixed for the hour of 9:15
P. M.   It was the duty of Mr. MacDonald, the sole attending
councilman, to remain at the council chamber until the hour
fixed by the council for this hearing, namely, 9:15 P. M.   Had
he done this his action in adjourning the hearing at that time
would have given actual notice to plaintiff, who was there and
then in attendance; and if plaintiff had not been present he
could not be heard to complain of an adjournment of the hear-
ing of which he had due notice.   Plaintiff was not bound to
make inquiry from the clerk as to what had taken place at some
previous hour of the day by the council, and had he done so,
as we have seen, it would not have enlightened him.   As we view
the matter, the session held at 8 o'clock (if it can be called
a session) had no power to act upon plaintiff's objections at
that hour, and the council got no greater power by the adjourn-
ment than it had at the hour it adjourned.   (Dillon on Municipal
Corporations, sec. 267, and note.)   By failure to meet at 9:15,
and either act upon plaintiff's objections or adjourn the hearing
to a day and hour certain, the council lost jurisdiction to con-
sider the objections without a new notice to plaintiff.

3. Appellant contends that, even if the proceedings were void,
plaintiff's payment was voluntary and the money cannot now be
recovered.   The act of 1889, section 16, makes the deed of the
superintendent of streets *prima facie* evidence of the regularity
of the proceedings thereunder, and is made "conclusive evidence
of the necessity of taking or damaging the lands taken or dam-
aged, and of the correctness of the compensation awarded there-
for."   Under the rule stated in *Pixley v. Huggins,* 15 Cal. 128,
many times approved by this court, the deed would cast a cloud
upon plaintiff's title.   It has been recently held here that where
an officer is about to sell property under a void assessment he
may be enjoined. (*Chase v. City Treasurer,* 122 Cal. 540.)   This
remedy was open to plaintiff in the present case.   But it was
not the only remedy available to him.   He also had the right

to pay the assessment under protest, setting forth the grounds of its illegality, in order to prevent the sale and clouding the title of his property; and he could look for relief in an action at law, which this is. The facts which gave the remedy of injunction gave the remedy at law, and payment after protest, under the circumstances here disclosed, was payment under duress. Where the deed shows on its face that the tax or assessment was void, or the law under which it was levied was invalid, a payment has been held to be voluntary and not recoverable. Such were the facts in the cases cited by appellant. In the present case, however, plaintiff's rights would have been cut off if he had not paid the assessment or enjoined the sale. It is claimed by appellant that section 3819 of the Political Code does not apply to local assessments. (Citing *Elberg v. San Luis Obispo Co.,* 112 Cal. 316; *Pacific Mut. Life Ins. Co. v. San Diego,* 112 Cal. 314; *Davis v. San Francisco,* 115 Cal. 67.) Those cases are clearly distinguishable from this case. But we do not understand that this action rests upon the code section cited, and it is not necessary to decide whether it does or does not apply. The money exacted from plaintiff under duress was not legally due, and might be recovered back irrespective of the code provision. (*Meek v. McClure,* 49 Cal. 623, citing the cases in which so held.)

4. It is further claimed by appellant that the city of Oakland is not liable because the fund was for the use of and to be disbursed by another organization, to wit, a street opening district within the city, of which the city was merely a creditor by reason of advancing money to it. We do not think that the act of 1889 creates a distinct organization separate from the municipality in the sense urged by appellant. The council authorizes the assessment; it conducts, through its agencies, all the proceedings, and the fund raised must be paid over to the city treasurer, who "shall, upon receipt thereof, place the same in a separate fund, designating such fund by the name of the street . . . . or place for the . . . . opening or other improvement of which the assessment was made." The city retains control of the fund from first to last through its proper officers. The court found, upon sufficient evidence, that the money paid by plaintiff was turned over to the city treasurer, "and was thereupon used

by said city and appropriated by her to municipal purposes." We do not think the liability of the city is less because the assessment was for the purpose of reimbursing the fund transferred to the street opening fund and because plaintiff's money was not in fact used in street opening expenses.

5. It is contended that plaintiff has no cause of action against defendant because the evidence fails to show that he presented his claim to the council or that it was acted upon by the council. Respondent replies that there is no provision of the charter of the city of Oakland which requires a claim to be first presented to the council or city before a suit can be maintained upon it. Appellant has called our attention to no such provision, and we have found none. Section 40 does require that "every demand must, before it can be paid, be presented to the auditor to be approved"; he must examine and approve or reject the claim; if he reject it he must return it to the council with his reasons for rejecting it, and a majority of the council may allow it upon the approval of the mayor, and it may then be audited. These and some other provisions are made for the allowance and payment of claims in the ordinary course, but no provision is made for actions against the city brought upon such or any claims. The evidence shows that plaintiff did present his claim to the auditor long before this suit was brought, who rejected it, and it was shortly afterward sent to the council and referred to the auditing committee, but no action is shown to have been taken on the claim by the council. We do not think the council could avoid the suit by refusing or neglecting to act upon the claim.

6. Appellant's remaining point is, that the complaint fails to state a cause of action because it does not appear therein that the superintendent who threatened to sell plaintiff's property was clothed with authority, real or apparent, to carry out his threat, or that he would have made a deed to the purchaser if the assessment was not paid. (Citing *Bank of Santa Rosa v. Chalfant*, 52 Cal. 170; *Bank of Woodland v. Webber*, 52 Cal. 73; *Bucknall v. Story*, 46 Cal. 589; 13 Am. Rep. 220.)

The Bank of Santa Rosa case was an action to recover a tax illegaly assessed. It did not appear from the complaint that the tax was delinquent, nor that the defendant was, when he demanded payment of the tax, armed with authority, real or ap-

parent, to carry out his threat to sell the property. Held, no legal duress shown, and that payment was voluntary. In the other case, cited in 52 California, the proof was that the tax was paid before it became delinquent, and before any threats were made to sell the property for its collection. Held, not duress. The case in 46 California was one where the assessment was void on its face. Payment of the tax was made under protest to prevent sale. Held, voluntary. In the present case the proceedings of the council and of the superintendent up to the point of advertising the property for sale to pay the tax in question are fully set out. The statute clothed the street superintendent with ample authority to carry out his avowed purpose to sell. The tax was delinquent, and on the face of the proceedings a deed after sale would have conveyed a good title. We think the complaint was sufficient.

It is advised that the judgment and order be affirmed.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.