[L. A. No. 4727. Department One.—February 28, 1919.]

## BYRON M. SPENCER et al., Respondents, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

[1] TAXATION — PAYMENT UNDER PROTEST—RECOVERY—DURESS.—The general rule is that money paid to an officer upon taxes or assessments which are alleged to be illegal and void is not deemed in law to have been paid under compulsion, so as to allow a recovery thereof where there was nothing to induce or compel payment except the mere threat by the officer of a sale of property or a suit for the recovery thereof if payment was not made. There must have been in addition some coercion or compulsion which amounted to a duress of the person or property of the payer.

[2] STREET LAW — VOID STREET OPENING ASSESSMENT — PAYMENT UNDER PROTEST—RECOVERY FROM CITY—ACT OF 1903—DEED PRIMA FACIE EVIDENCE OF TITLE.—In view of the provision of the Street Opening Act of 1903 declaring that the deed of the purchaser at the sale of property for a delinquent assessment shall be *prima facie* evidence of the title of the grantee (Stats. 1903, p. 383), moneys paid under protest upon assessments for the opening of a street after published notice of the sale, but before the same, may be subsequently recovered in an action against the city, where the assessment and all proceedings leading up to it were declared void because of a latent defect in the description of the boundaries of the district formed for the purposes of the assessment.

[3] ID.—LATENT DEFECT IN STREET PROCEEDINGS—THREATENED SALE— RIGHT TO MAKE PAYMENT UNDER PROTEST.—Where the invalidity of a street opening proceeding is due to a latent defect in the description of the boundaries of the district formed for the purposes of the assessment, such defect, therefore, not appearing on the face of the proceedings, the property owner would in any litigation with the grantee be compelled to establish the facts showing the defect, which brings the case within the rule that his property is imperiled by the threatened sale and that he may pay the assessment under protest and subsequently recover it in an action.

[4] ID.—PAYMENT UNDER PROTEST — SUFFICIENCY OF FINDING. — In an action to recover money paid under protest upon a street opening assessment under the act of 1903, a finding, with respect to the protest, that the owners paid their respective assessments "under protest, and did, at the time of said payment, then and there reserve to themselves and each of them the right to fully recover the same," is a sufficient finding of the ultimate fact.

[5] ID.—WRITTEN PROTEST—STATEMENT OF GROUNDS—CODE PROVISION INAPPLICABLE TO STREET OPENING ASSESSMENT.—Section 3819 of

the Political Code, providing that the protest there authorized must be in writing and must specify the grounds upon which the payer claims that the tax is void, refers only to ordinary taxes for state and county purposes, and does not apply to special assessments made under the Street Opening Act of 1903 nor to other special assessments, except where the act providing therefor makes, the provisions of section 3819 applicable.

[6] ID.—PAYMENT OF STREET OPENING ASSESSMENT — PAROL PROTEST SUFFICIENT.—In view of the fact that the Street Opening Act of 1903 contains no provision on the subject of the payments of assessments under protest, and the sufficiency of such protests must be determined by the rules of the common law, it is competent to make such protests in parol, and in an action to recover the assessments so paid, it is not error to admit testimony of the conversations on the subject between the persons making the payments and the collecting officer at the times of the respective payments.

[7] ID.—ACTION TO TEST VALIDITY OF ASSESSMENT—NOTICE TO CITY OF CLAIM OF PROPERTY OWNERS—PAYMENT OF ASSESSMENT—SPECIFICATION OF GROUNDS OF PROTEST UNNECESSARY.—The bringing of an action to test the validity of street opening proceedings was express notice to the city and to all of its agencies empowered to act on the matter that the plaintiffs in such action claimed that the assessments were illegal, and as to such plaintiffs it was unnecessary in making payments of the assessments after published notice of the sale but before the sale of their properties for delinquent assessments to specify their grounds of protest.

[8] ID.—SPECIFICATION OF GROUNDS OF PROTEST—RULE.—In cases where the collecting officer has not paid over the money and is therefore still subject to action, specifications of the grounds of protest are not necessary where such officer is chargeable with knowledge of the illegality of the tax, or is aware of the facts which make it illegal, and in such cases a general statement that it is illegal is sufficient.

[9] ID.—INTEREST ON RECOVERED ASSESSMENTS.—The rule that in an action to recover taxes paid under protest under section 3819 of the Political Code no interest from the time of payment to the date of judgment can be allowed should apply to money paid under protest and governed by the common law, and the proper rule applicable in an action to recover money paid upon a street opening assessment, where the assessment has been judicially declared to be void, is to allow interest from the date the invalidity was established by the final judgment.

[10] ID.—RECOVERY OF ILLEGAL ASSESSMENT FROM COLLECTING OFFICERS—WHEN PERMISSIBLE.—An action will not lie against collecting officers or boards, such as the board of public works and its members, to recover money paid upon an illegal assessment, unless

the money still remains in the hands of the board or its members at the time such action is begun.

[11] Id.—Recovery Against Members of Board of Public Works.— An action to recover money paid upon assessments for the opening of a street will not lie against the persons who at the time of the payments were members of the board of public works, where at the time the action was commenced the money collected upon the assessments was all paid into the treasury of the city and paid out of the treasury in satisfaction of damages awarded to the persons whose lands were taken and damaged by the opening of the street.

[12] Id.—Applicability of Rule to City or County.—Wherever a city or a county occupies a position similar to that of a collection agent who has paid the money collected over to his principal, this rule applies.

[13] Id.—Recovery Against City.—A city is liable to the payers of a void assessment for the opening of a street, where payments were made under protest, notwithstanding the city had prior to the beginning of the action to recover the payments paid out the money as damages to the persons whose land was taken or damaged for the opening of the street.

[14] Id.—Recovery of Assessments — Statute of Limitations.—An action to recover money paid upon assessments for the opening of a street is not founded upon an instrument in writing, and section 339, subdivision 1, of the Code of Civil Procedure is applicable thereto.

[15] Id.—Demands Against City — Presentation — Charter — Accrual of Cause of Action.—Where the charter of a city provides that demands must be presented to its council or some officer of the city for approval or rejection, and that no payments can be made nor suit be brought thereon until after such presentation and rejection, the cause of action does not accrue until such presentation has taken place.

[16] Id.—Action not Barred by Statute.—An action to recover money paid upon assessments for the opening of a street was not barred by the provisions of section 339, subdivision 1, of the Code of Civil Procedure, notwithstanding the payments were made five days more than the two years prior to the beginning of the action, where the city charter provides for the presentation and approval or rejection of claims before bringing suit thereon, since it cannot reasonably be claimed that the parties could have had action upon their claims by the city officials within the five-day period.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Grant Jackson, Judge.   Reversed.

The facts are stated in the opinion of the court.

Albert Lee Stephens, City Attorney, Charles S. Burnell, Assistant City Attorney, and Wm. P. Mealey, Deputy City Attorney, for Appellants.

W. W. Hyams, F. E. Davis and Davis & Hyams for Respondents.

SHAW, J.—In this action the plaintiffs seek to recover money paid upon assessments for the opening of a street in Los Angeles, under the Street Opening Act of 1903 (Stats. 1903, p. 376). The court below gave judgment in favor of plaintiffs against all of the defendants. The appeal is from the judgment. The record also presents for review an order denying a motion for a new trial.

The ground of the action was that the assessments were invalid and that the payments were made by compulsion and under protest. The proposition that the assessments in question were invalid was established by the decision of the district court of appeal in *Walker et al.* v. *Los Angeles et al.*, 23 Cal. App. 634, [139 Pac. 89]. The board of public works and the persons who were members thereof at that time were parties defendant to that action. The court there held that said assessment and all proceedings leading up to it were void because of the fact that there was a latent ambiguity in the description of the boundaries of the district in the ordinance of intention under which the proceedings were instituted and that this ambiguity, when shown, made the description of the district uncertain and void. The defendants do not question the soundness of that decision. In the present action the plaintiffs claim as assignees of fifty-four of the property owners who, it is alleged, paid said assessment under protest, the amount paid being in the aggregate $46,599.32. The court below made findings in favor of the plaintiffs, covering the claims of forty of the plaintiffs' assignors, amounting to $30,609.25.

The appellants present the following points as cause for reversal: 1. That the payments were not made under any duress of person or property and were not accompanied by any valid or sufficient protest, and hence that they were voluntary payments which cannot be recovered. 2. That the court erred in allowing the plaintiffs interest accruing from the time of mak-

ing of the payments. 3. That the personal judgment against the members of the board of public works is not sustained by the findings or the evidence. 4. That the action was not begun until after the money paid in upon the assessments had been paid out by the city upon the damages allowed in the proceeding for the opening of the street, and that in such a case the money cannot be recovered from the city or its officers. 5. That with respect to some of the assignors of the plaintiffs the action is barred by the two years' statute of limitations. Some minor points regarding rulings upon the admission of evidence will be considered in connection with the question of voluntary payments. We will consider the points in the order above stated.

[1] 1. The general rule is that money paid to an officer upon taxes or assessments which are alleged to be illegal and void is not deemed in law to have been paid under compulsion so as to allow a recovery thereof where there is nothing to induce or compel payment except the mere threat by the officer of a sale of property or a suit for the recovery thereof if payment is not made. There must be in addition some coercion or compulsion which amounts to a duress of the person or property of the payer. (*Phelan* v. *San Francisco,* 120 Cal. 5, [52 Pac. 38] ; *Maxwell* v. *San Luis Obispo County,* 71 Cal. 466, [12 Pac. 484].) In the present case, however, we think the facts show that there was such coercion and compulsion.

The conditions under which the payments were made were as follows: Under the charter of the city of Los Angeles, its board of public works exercised the powers conferred by the act of 1903, aforesaid, on the street superintendent. (Stats. 1905, p. 983.) In pursuance of the ordinance above mentioned, the board made and filed an assessment for the expenses of the street opening and published notice thereof. The assessment charged certain sums of money against lands of the plaintiff's assignors. These assessments thereafter became delinquent and on December 8, 1911, the board published a notice of the sale of the property for such delinquent assessments, stating therein that the property would be sold on December 27, 1911, unless the assessments thereon with penalties and costs were paid in the meantime. Prior to the day of sale the plaintiffs' assignors paid their respective assessments. The act of 1903 provides that if a delinquent assess-

ment is not paid, the property assessed must be sold to any person who will take the least quantity of land and pay the assessment, penalty, and costs; that a certificate of sale must be issued to such purchaser, which vests in him the lien of the assessment; that after twelve months from the sale, if the purchaser has given proper notice of his application therefor, a deed of the property sold must be made to him; that at any time prior to the execution of such deed the property may be redeemed from such sale; and that such deed "shall be *prima facie* evidence of the truth of all matters recited therein, and of the legality of all proceedings prior to the execution thereof, and of title in the grantee." (Stats. 1903, p. 383, secs. 25–29.)

The rule regarding payments made under such circumstances is well established by our decisions. *Gill* v. *Oakland,* 124 Cal. 335, [57 Pac. 150], is a case in point. That was an action to recover money paid under protest upon a street opening assessment, made under the act of 1889 (Stats. 1889, p. 70), which in all essential particulars, so far as this question is concerned, was identical with the act of 1903. Concerning the claim that payment made after the giving of notice of sale and before the sale was to take place was voluntary, the court said (124 Cal. 341, [57 Pac. 152]) : "Under the rule stated in *Pixley* v. *Huggins,* 15 Cal. 128, many times approved by this court, the deed would cast a cloud upon plaintiff's title. It has been recently held here that where an officer is about to sell property under a void assessment he may be enjoined. (*Chase* v. *City Treasurer,* 122 Cal. 540, [55 Pac. 414].) This remedy was open to plaintiff in the present case. But it was not the only remedy available to him. [2] He also had the right to pay the assessment under protest, setting forth the grounds of its illegality, in order to prevent the sale and clouding the title of his property; and he could look for relief in an action at law, which this is. The facts which gave the remedy of injunction gave the remedy at law, and payment after protest, under the circumstances here disclosed, was payment under duress. Where the deed shows on its face that the tax or assessment was void, or the law under which it was levied was invalid, a payment has been held to be voluntary and not recoverable. Such were the facts in the cases cited by appellant. In the present case, however, plaintiff's rights would have been cut off if he had not paid the assessment or enjoined the sale." The reason for the dis-

tinction made between this and the other cases where payment was held to be voluntary is that in those cases the deed upon the invalid sale would, when executed, show on its face its invalidity, so that when the grantee therein sought to establish his right under the deed, his very attempt to do so would defeat such right. In such a case it is well established that equity will not enjoin the making of the sale or the execution of the deed, and it has also been held that the threat of such sale and deed does not constitute sufficient duress of property to make the payment under protest involuntary within the doctrine that an involuntary payment may be recovered. In the present case the proceedings were not void on their face, and the deed, when executed, would have been *prima facie* evidence of the title of the grantee to the land purporting to be conveyed thereby. The defect in the description of the boundary was a latent defect. It did not appear on the face of the ordinance, but was made to appear in the case of *Walker* v. *Los Angeles,* 23 Cal. App. 634, [139 Pac. 89], by extrinsic proof showing that the calls in the boundary lines were so uncertain that, when applied to the extrinsic facts, the point to which they would lead could not be ascertained. In any litigation by the property owner with a grantee under such sale, it would be necessary for such owner to establish these facts. [3] For these reasons the case comes within the rule that his property is imperiled by the threatened sale and that he may pay the assessment under protest and subsequently recover it in an action. In the cases of *Williams* v. *Corcoran,* 46 Cal. 553, *Wills* v. *Austin,* 53 Cal. 152, and *Byrne* v. *Drain,* 127 Cal. 663, [60 Pac. 433], cited by the appellant, the deed and the proceedings thereunder were invalid on their face and consequently did not create any cloud upon the title to the land or constitute duress of property sufficient to make such payment involuntary. (*Maskey* v. *Lackmann,* 146 Cal. 780, [81 Pac. 115].) They do not conflict with the doctrine stated in *Gill* v. *Oakland, supra.*

It is urged that the previous decisions on the subject favorable to the respondent were overruled in *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102]. The point now under consideration was not involved in that case. It was a suit to enjoin a sale by the tax collector. The main question discussed was the discretionary power of courts of equity to enjoin the ordinary proceedings for the collection of taxes. It was said to be the

rule that such injunction would not issue unless it was neces-
sary to protect the rights of the property owner, or unless it.
appeared that he had no adequate remedy at law, and, there-
fore, that "a court of equity will go no further than is neces-
sary to protect the rights of the property owner, and will not
to any greater extent impede the officers of the state in the
performance of their duties" (149 Cal. 594, [87 Pac. 110]).
Upon this principle the court held that under the law then
existing, under which the only thing done on the day of sale
would be a formal entry of the sale to the state itself of all de-
linquent property on the roll, a sale redeemable at any time
within five years, and thereafter until the state should receive
a deed from the tax collector and should offer the property
for resale, that neither the certificate of sale nor anything to
be done prior to the execution of the deed, more than five
years afterward, constituted *prima facie* evidence of the valid-
ity of the proceedings, and therefore that equity would not
interpose to prevent the performance of the preliminary acts
by the tax collector. Although not stated in the opinion, it
might have been said as another reason for denying the in-
junction that the property owner would have a remedy at law
under section 3819 of the Political Code, by paying the alleged
illegal tax and proceeding with the action there authorized to
recover it from the county. This case is not in conflict with
the rule that in cases not covered by section 3819, where the
ultimate result of the threatened sale will be the execution of
a deed *prima facie* valid, the party may prevent the sale by
payment under protest, and that such payment will not be
deemed voluntary but may be recovered in an action for money
paid.

[4] With respect to the protest, the finding is that the
owners paid their respective assessments "under protest, and
did, at the time of said payment, then and there reserve to
themselves and each of them the right to fully recover the
same." This is a sufficient finding of the ultimate fact. The
evidence in support of this finding is claimed to be insufficient.
It appears that the action of *Walker et al.* v. *Los Angeles et
al.* was begun some time prior to December 4, 1911; that its
object was to enjoin the city of Los Angeles and the board of
public works from making any sale of the property of plain-
tiffs therein upon the assessment in question; that the amended

complaint therein was served on the defendants on December 4, 1911; that on December 8, 1911, as above stated, the board of public works gave the necessary notice of sale, fixing the date of the sale as December 27, 1911; that almost all of the plaintiffs' assignors in this action were plaintiffs in the aforesaid action to enjoin the sale; that while this action was pending, the payments herein sued for, with two exceptions to be hereafter noticed, were made to the board of public works. The books of the board show that opposite the entries therein of the assessments against twenty-three of plaintiffs' assignors there was indorsed in red ink at the time of payment thereof by the collecting officer the words, "paid under protest." Ten of the persons whose payments were not so marked testified on the trial that when they made the payments they orally stated to the collecting officer that they paid the same under protest. One or two of these do not appear to have used the word "protest," but merely objected that the tax was unjust, because their property was assessed in greater proportion than the property of some others within the district. As the case must be reversed for other reasons, it is unnecessary to determine here whether with respect to these two persons the protest was sufficient. There was no evidence that any of the persons paying under protest specified at that time, as grounds thereof, that the assessments were void because of the latent ambiguity in the description above referred to. As to those whose payments were marked as paid under protest on the collector's book there was no other evidence of the nature of the protest except the entry on said book. The complaint in *Walker et al.* v. *Los Angeles et al.* stated clearly the facts concerning the latent ambiguity in the description upon which the assessment was finally adjudged to be void. From the testimony of the witnesses concerning the conversations at the time of payment, and from the pendency of the Walker case, and the allegations of the complaint therein, the court below might reasonably have inferred that the grounds upon which the parties claimed that the assessments were invalid were fully understood, both by the protesting owners and by the collecting officers, as including those stated in said complaint; and that there was no necessity for further specification to make the reasons for the protest fully understood by such officers.

The appellant contends that the protests should have been in writing and further that, whether written or oral, the law requires that a protest shall specify the particulars in which the assessment is claimed to be illegal.

Section 3819 of the Political Code provides that the protest there authorized must be in writing and must specify the grounds upon which the payer claims that the tax is void. But this section refers only to ordinary taxes for state and county purposes. It does not apply to special assessments made under the Street Opening Act of 1903 nor to other special assessments, except where the act providing therefor makes the provisions of section 3819 applicable. (*Davis* v. *San Francisco,* 115 Cal. 67, [46 Pac. 863] ; *Easterbrook* v. *San Francisco,* 5 Cal. Unrep. 341, [44 Pac. 800] ; *Phelan* v. *San Francisco,* 120 Cal. 4, [52 Pac. 38] ; *Justice* v. *Robinson,* 142 Cal. 199, [75 Pac. 776].) The act of 1903 contains no provision on the subject. [5] Consequently the sufficiency of the protests in question must be determined by the rules of the common law. (*Justice* v. *Robinson, supra.*) The common-law rule is that a writing is not essential to the validity or effect of any transaction or contract. Careful persons resorted to writings in order to preserve a more accurate memorial of the terms of the agreement or statement so as to facilitate the proof thereof. But this was a measure of convenience only and the affair, when proven, was, at common law, as effectual when in parol as when it was in writing. [6] It was competent, therefore, for the parties to make their protests in parol, and it necessarily follows that the court did not err in admitting the testimony of the conversations on the subject between the persons making the payments and the collecting officer at the times of the respective payments. It being a matter that could have been accomplished in parol, all the conversation and all the circumstances that would tend to show the understanding of the parties regarding the matter at the time the respective payments were made would be admissible.

[7] We think an analysis of our decisions shows that under the circumstances of this case it was not necessary that the grounds should be specified at the time of making the payment. The question was under discussion in *Meek* v. *McClure,* 49 Cal. 628, where the court said : ''In most of the cases

in which the effect of a protest is considered, the payment was made to a public officer; and the only purpose of the protest was to give the officer notice that the money was not legally due, and thus to enable the officer to protect himself against the consequences of an action to recover the money back from him. The officer is thereby put on inquiry as to whether the money is legally due; and if he finds that the demand is illegal, he may protect himself by refusing to receive the money; or, if he finds that it is of doubtful legality, he may take the proper steps to avoid, or protect himself against responsibility. If the officer has notice of the matter which renders the demand illegal, another notice in the form of a protest would be useless; but if he has no knowledge of such matter, he ought not to be subjected to the costs and consequences of an action to recover the money from him—and that, too, perhaps, after he has paid over the money in the usual course of official business—without notice from the party paying the money of the grounds upon which he claims that the demand is not legally due." It is true that in that case the court further said that wherever a protest is essential, it was "necessary to state the grounds upon which the party paying the money claims that the demand is illegal." But that was an action against the collecting officer alone, and there was nothing to show that he had actual knowledge of the defect which made the tax void and the statement last quoted obviously referred to that phase of the case. In *Mason* v. *Johnson,* 51 Cal. 612, the protest did not state the grounds upon which it was claimed the tax was void, but merely stated that it was unlawful. The officer was not authorized by law to collect the tax. The court held the protest to be sufficient, because the tax collector "was bound to take notice of the matter which rendered the tax illegal," it being a matter of law. So in *Smith* v. *Farrelly,* 52 Cal. 77, a tax was held to be illegal because it was made by a county assessor instead of a district assessor, and the tax collector of the county was not authorized to collect it because of the fact that he was elected as the county tax collector and not as the district tax collector. The protest did not state either of these facts as grounds thereof. It was held that this was not necessary, because the tax collector must know that he was not elected as the tax collector of the district and that the assessment had not been

made by the proper assessor, the court saying: "It is not necessary for the person paying taxes under protest to state facts of which the tax collector has notice." Parenthetically, it may be remarked that the court in that case further decided that a tax paid after the delinquent list had come into the hands of the tax collector, and after the publication of the notice of the delinquent sale, was a payment under duress. Again, in *De Fremery* v. *Austin*, 53 Cal. 382, the court said on this subject: "The protest in this case does not specify any grounds of illegality of the taxes. It was not necessary for the plaintiffs to specify the illegality of the tax upon the solvent debts, or of the state tax upon the other property, for the tax collector is chargeable with notice of their illegality; but if they desired to recover back any portion of the tax on the ground that the levy for certain of the funds specified in the order of the board levying the city and county tax was illegal, they should have specified the grounds of the alleged illegality of the tax, for there is nothing in the case showing that the tax collector was chargeable with notice of the alleged illegality." In each of these cases the action was against the collecting officer alone. The public corporation for which he acted was not sued. In the case at bar the action is against the city of Los Angeles. The members of the board of public works are also parties defendant, but, as will presently appear, they are not personally or officially liable in the action. The case may therefore be considered as if it were against the city alone. The action in the Walker case was express notice to the city, and to all of its agencies empowered to act on the matter, that the plaintiffs therein claimed that these assessments were illegal and of the particular facts upon which such claim was based. [8] It is obvious that no further information to the city was necessary. The rule established by the foregoing decisions is that even in cases where the collecting officer has not paid over the money and is therefore still subject to action, specifications of the grounds of protest are not necessary where such officer is chargeable with knowledge of the illegality of the tax, or is aware of the facts which make it illegal, and that in such cases a general statement that it is illegal is sufficient. We conclude, therefore, that the evidence was sufficient to support the finding, at least with respect to all the payers who were parties plaintiff in the Walker case

and who paid after the notice of sale was given and who paid
under protest.

There were two of plaintiffs' assignors, Abbott and Straube,
who paid their assessments before the notice of sale was given.
As has already been shown, there was at that time no duress
of property. There was only an apparent lien upon that
property. At that time no proceeding to enforce the lien by
a sale had been instituted. The protest was therefore unavail-
ing. (*Brumagim* v. *Tillinghast,* 18 Cal. 266, [79 Am. Dec.
176].) The judgment, so far as these claims are concerned,
was erroneous, because the payments were voluntary.

2. The judgment in this case exceeds the aggregate amount
of the payments which were allowed to plaintiffs by about
nine thousand dollars. The appellants claim that it is exces-
sive to that extent.. The excess is made up of interest accru-
ing on the payments from December, 1911, to the date of
judgment. It has become established by our decisions that in
an action to recover taxes paid under protest under section
3819 of the Political Code no interest from the time of pay-
ment to the date of judgment can be allowed. (*Savings & L.
Society* v. *San Francisco,* 131 Cal. 356, [63 Pac. 665] ; *Colum-
bia Savings Bank* v. *Los Angeles,* 137 Cal. 471, [70 Pac. 308] ;
*Miller* v. *Kern County,* 150 Cal. 797, [90 Pac. 119].) In the
Columbia Savings Bank case the court said that interest was
not allowable for the reasons, first, that the statute did not
provide for it; second, that the money could not be said to be
due from the county "until its liability was fixed by the judg-
ment of a court of competent jurisdiction," and, third, that
it was not a loan of money which could be presumed to be
made upon interest. [9] We think the same rule should
apply to money paid under protest and governed by the com-
mon law, and that the proper rule applicable here is that
interest should not have been charged against the city of Los
Angeles until the invalidity of the assessments was established
by the final judgment of the court against the city in the
action of *Walker and Others* v. *Los Angeles* aforesaid. That
judgment established the invalidity of the assessment and set-
tled the question that the defendant city was withholding
money from the plaintiffs without right. It brings the case
within the provision of section 1915 of the Civil Code, allow-
ing interest for the "detention of money." It is true that,

while the assignors of plaintiffs were parties to that action at the time the payments were made, they afterward withdrew therefrom and dismissed the action so far as they were concerned, but it is at least a fair presumption that this withdrawal was made because of the fact that in the meantime they had preserved their rights to recover the money by making the protest accompanying the payment thereof, and under these circumstances we see no reason why they were not entitled to interest as soon as it was adjudged that the city had no right to exact payment and that it was unjustly withholding the money from the plaintiffs. The court erred in so far as it allowed interest for a time antedating the final judgment in that action.

3. The judgment appealed from purports to run, not only against the city of Los Angeles, but also against the persons who at the time of the payments were members of the board of public works, and against the board of public works also. The board of public works is an agency of the city; it has no separate corporate existence, and so far as we are aware it is incapable of either suing or being sued, except perhaps in *mandamus* to compel the performance of its duty. Consequently the judgment, so far as the board is concerned, is unauthorized. With respect to the liability of the members thereof who were in office at the time the payments were made, it appears from the evidence that the money collected upon these assessments was all paid into the treasury of the city and paid out of the treasury in satisfaction of damages awarded to the persons whose lands were taken and damaged by the opening of the street, and that this all occurred before the beginning of the present action. [10] It is settled by our decisions that an action will not lie against collecting officers or boards, such as the board of public works and its members, to recover money paid upon an illegal assessment, unless the money still remains in the hands of the board or its members at the time such action is begun. (*Hartford etc. Co.* v. *Jordan,* 168 Cal. 270, [142 Pac. 839]; *Craig* v. *Boone,* 146 Cal. 718, [81 Pac. 22].) [11] It follows that the judgment against the members of the board is not sustained by the evidence.

4. As has just been said, there can be no recovery in cases like the present against one who is a mere collection officer

and who before the action is begun has paid the money over to his principal in due course of law. The appellants contend that this rule applies to the city itself and that it cannot be held liable because of the fact that before the action was begun the money collected upon these assessments had all been paid out upon the damages allowed to the persons whose land was taken or damaged for the opening of the street. **[12]** Wherever a city or a county occupies a position similar to that of a collection agent who has paid the money collected over to his principal, this rule applies. The cases cited by the appellants are of this character. They are *Elberg* v. *County of San Luis Obispo,* 112 Cal. 316, [41 Pac. 475, 44 Pac. 572] ; *Pacific etc. Co.* v. *County of San Diego,* 112 Cal. 314, [41 Pac. 423, 44 Pac. 571] ; *Easterbrook* v. *San Francisco,* 5 Cal. Unrep. 341, [44 Pac. 800], and *Davis* v. *San Francisco,* 115 Cal. 67, [46 Pac. 863]. In these cases it was held that where a collection officer of one public corporation, a county tax collector, for example, is also and *ex officio* empowered to collect taxes levied for another public corporation, such as a school district, which tax, when collected, belongs to and is to be paid over to such other corporation, a suit against the county for the recovery of the money paid to such collecting officer upon such a tax, upon the ground that the tax was illegal and void, cannot be maintained, unless it is begun before the money has been paid over to the other public corporation for which it was collected and to which it belonged. These decisions have no application here so far as the city of Los Angeles is concerned. The street opening district formed for the purposes of the assessment was not a public corporation, but was a mere area or taxing district which the proper authority had declared to be specially benefited by the proposed improvement. The city had the right of possession and control of the funds raised by the assessment. It had the power to raise funds for such street opening either by a proceeding for a special assessment, as here attempted, or by general taxation upon all the taxable property in the city. (Sec. 2, subds. 13, 16, 18 and 19, City Charter, Stats. 1911, p. 2061.) The money when raised belonged to the city. The protest made to the city preserved to the assessment payers the right to recover the same against the city, and it could not thereafter pay out the money in pursuance of the illegal assessment and thereby escape liability

to the property owners. Upon receiving the money under a protest properly made it was the duty of the city to withhold the funds until the legality of the assessment was ascertained, and when that point was decided against the city it became its duty immediately to return the money to those from whom it had been received. This is clearly the effect of the decision of this court in *Gill* v. *Oakland,* 124 Cal. 335, [57 Pac. 150], where the facts were in all essential particulars the same as those here existing. The only difference is that in that case the city had previously advanced money from its general fund for the opening of the street, and the assessment which was declared to be illegal was levied for the purpose of refunding the same to the city. [13] Here the city having used the money it had illegally collected to pay for the opening of the street must be deemed to be in the same position as if it had paid out the same from its general fund. The difference in the two cases does not justify any different rule regarding the city's liability.

5. Appellants claim that with respect to the payments made by Straube and Abbott, Lee, and Parish, the action is barred by the two years' statute of limitations, as an action not founded upon an instrument in writing. (Code Civ. Proc., sec. 339, subd. 1.) [14] There can be no question but that the action is not founded upon an instrument in writing, and therefore this statute applies. The action was begun on December 20, 1913. The payments of the above-named parties were all made more than two years before that time. Those of Straube and Abbott were made in November, 1911. As we have already decided that these two parties did not pay under duress or compulsion and could not recover, it is unnecessary to consider the effect of the statute of limitations upon that part of the plaintiff's claim. The payments of Lee and Parish were made on December 15, 1911, five days more than the two years prior to the beginning of the action.

If the cause of action to recover the money accrued immediately upon such payment, these claims would be barred. But this is not the case. The city charter provides that claims against the city shall be paid only on demands as provided therein; that every claim must be first presented to and approved by the board authorized to incur the liability represented thereby, in this case the board of public works; that if such claim is approved, it must then be presented to the city

auditor to be audited by him, and that if he rejects it or approves it in part only, it shall then go to the finance committee of the council; that it must then be considered by such committee and reported to the council for its action thereon; that the council may overrule or sustain the objection of the auditor and shall thereupon return the same to the auditor with its action indorsed thereon; that no payment can be made from the city treasury or out of the public funds of the city unless the demand therefor be so presented to and approved by every officer, board, or body, as required by the charter, all of which must appear on the face of the paper representing the demand, and, finally, that no suit can be brought on any claim for money or damages against the city or any of its agencies or officers until a demand for the same has been presented in the manner above stated, and rejected, in whole or in part. (City Charter, secs. 216, 217, 219, 220, 222a, 222g, Stats. 1911, p. 2152.) **[15]** It has been decided, and must now be considered as settled, that where the charter of a city provides that demands must be presented to its council or some officer of the city for approval or rejection, and that no payments can be made nor suit be brought thereon until after such presentation and rejection, that the cause of action does not accrue until such presentation has taken place. Whether failure of the city officers to act upon the claim will presently set in motion the right to begin a suit it is unnecessary to determine. At all events there must be a presentation and time given for action by the city authorities before the cause of action accrues. (*Farmers' etc. Bank* v. *Los Angeles,* 151 Cal. 655, [91 Pac. 795]; *Southern Pac. Co.* v. *Santa Cruz,* 26 Cal. App. 26, [145 Pac. 736].) The appellants resort to the doctrine laid down in a number of decisions where it was held that in cases where a demand is necessary to complete a cause of action, the party having the claim cannot delay the time when the statute of limitations begins to run by failing to make the demand. (*Williams* v. *Bergin,* 116 Cal. 56, [47 Pac. 877]; *Barnes* v. *Glide,* 117 Cal. 1, [59 Am. St. Rep. 153, 48 Pac. 804]; *San Luis Obispo County* v. *Gage,* 139 Cal. 398, [73 Pac. 174], and other cases which we need not mention.) In *Williams* v. *Bergin* this rule is laid down, and it is said that a party "cannot suspend indefinitely the running of the statute of limitations by a delay in performing such preliminary act,

and that if the time within which such act is to be performed is indefinite or not specified, a reasonable time will be allowed therefor, and the statute will begin to run after the lapse of such reasonable time. What is a reasonable time will depend upon the circumstances of each case. . . . The rule rests upon the principle that the plaintiff has it in his power at all times to do the act which fixes his right of action. The reason of the rule, however, ceases when the right of action is not under his control, but depends upon the act of another; and when the act upon which his right to maintain an action depends is an official act to be performed by a public officer in the line of his official duty, there is no presumption that any delay in its performance was unreasonable." (116 Cal. 61, [47 Pac. 878].) Under the rule thus stated the action upon these claims cannot be deemed to have been barred by the statute. The payments were made on December 15th, only five days before the beginning of the two-year period preceding the beginning of the action. It cannot reasonably be claimed that within that five-day period the parties could have secured action upon their claims by the several city officers and board who were required to act thereon before the claim could have been paid, or that the reasonable time within which to procure action of the city authorities did expire before the expiration of the said five days. (See, also, *Dennis* v. *Bint*, 122 Cal. 45, [68 Am. St. Rep. 17, 54 Pac. 378].) It appears from the record that demands were presented long before the expiration of the two years, and that they were duly rejected before this action was begun. The precise question was not before the court in *San Luis Obispo County* v. *Gage, supra*, and what is there said is not in conflict with the rule just stated. [16] We are of the opinion that these demands were not barred by the statute of limitations.

Some of the questions we have treated would not be absolutely necessary to a determination of the case, but we have considered them because of the fact that the judgment must be reversed and a new trial may ensue in which the same questions may again arise. Although from what we have said it is apparent that the judgment against the city of Los Angeles was correct as to a part of the claim of the plaintiffs, yet the record does not present facts sufficient to enable us to determine with certainty how much should be recovered, and we

therefore deem it better to reverse the entire judgment, so that upon a new trial the facts may be more clearly established.

The judgment is reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred.