[L. A. No. 4594.   In Bank.—September 3, 1919.]

# ANAHEIM SUGAR COMPANY (a Corporation), Appellant, v. THE COUNTY OF ORANGE, etc., Respondent.

[1] Taxation — General Tax—Burden in Proportion to Benefits—Nonessential Element.—It is not essential to the validity of a general tax that the burden be in proportion to the benefit derived.

[2] Id.—Tax for Formation of Road Divisions—General Tax.—The tax provided for in the sections of the Political Code authorizing the formation of road divisions is a general tax and not a special assessment, since the burden is imposed upon all of the property in the district, real and personal, according to its value and not upon the basis of special benefit.

[3] Id.—Territorial Subdivisions for Taxing Purposes — Question for Legislature.—It is purely a question for the legislature to determine what shall be the territorial subdivisions of a state for taxing purposes, and it is not within the province of the courts to hold that a tax amounts to a taking without due process of law solely on the ground that the property or person taxed is in a position where a proportionately small or even minute amount of benefit may be received.

[4] Id.—Creation of Taxing Districts for Highway Improvements—General Tax—Power of Legislature.—It was competent for the legislature to provide for the creation upon petition and after due hearing by the county supervisors of taxing districts for the construction of highway improvements and at the same time provide that the tax should be general if it appeared that some benefit would accrue to the property taxed.

[5] Id.—General Tax—Intent of Legislature—When Controlling.—The intent of the legislature that a tax shall be a general tax is controlling where it appears upon an analysis of the facts of the particular case that the tax is in fact for a public purpose and calculated to benefit the members of the taxing district in common with the public and not merely as individual property owners.

[6] Highways—Formation of Road Divisions—Code Provisions Constitutional.—The tax provided for in the sections of the Political Code authorizing the formation of road divisions is not in conflict with the provisions of the constitution of the state or of the United States prohibiting the taking of private property without due process of law.

[7] Id.—Road Division not a Corporation—Status of County Officials.—The road divisions formed pursuant to the provisions of the Political Code have no corporate existence *de jure* or *de facto*,

and county officials in levying and collecting the tax and in holding the moneys collected act in their respective capacities as county officers, and not *ex-officio* officers of a corporate entity, separate from the county.

[8] CORPORATIONS—CREATION BY IMPLICATION—ORIGIN AND APPLICATION OF DOCTRINE.—The doctrine of the creation of corporations by implication has been developed to save and make effective legislative acts which purport to confer powers which can only be exercised by a corporation upon bodies to which the legislature has neglected to specifically grant corporate existence, and should not be extended beyond those cases where that necessity appears to which the doctrine owes its origin and existence.

[9] ACTION TO RECOVER ROAD TAXES — PAYMENT UNDER PROTEST — PLEADING—PARTIES.—In an action to recover money paid under protest to a county tax collector on a levy of taxes for the improvement of highways in a road division of the county, the county is the only proper party defendant, for the tax is essentially a county tax for a special purpose.

[10] HIGHWAYS—FORMATION OF ROAD DIVISION—COLLATERAL ATTACK—EXCESS OF JURISDICTION.—The determination of a board of supervisors on a petition for the formation of a road division is of a judicial or *quasi*-judicial nature, and is subject to collateral attack on the ground of excess of jurisdiction.

[11] ID. — PETITION FOR FORMATION OF ROAD DIVISION — DEFECTS IN DESCRIPTION OF BOUNDARIES—LACK OF JURISDICTION—COLLATERAL ATTACK IN ACTION TO RECOVER TAXES.—In an action to recover road taxes paid under protest, the plaintiff has the right to contend that by reason of alleged defects in the description of the boundaries of the proposed road division as set forth in the petition as originally filed and published by the persons interested in the formation of the district, the board of supervisors never gained jurisdiction to proceed in the matter.

[12] ID. — DEFECTIVE PETITION FOR FORMATION OF ROAD DIVISION — INCORRECT DESCRIPTION OF BOUNDARIES.—A petition for the formation of a road division is vitally defective where the description of the boundaries of the proposed division by courses and distances is followed by the statement that the boundaries are more particularly shown on a map, and the map deviates materially in many important particulars from the description by courses and distances.

[13] ID. — CORRECTION OF DEFECTIVE DESCRIPTION — PUBLICATION OF NOTICE—JURISDICTION NOT ACQUIRED.—Where the original publication of a petition for the formation of a road division was wholly nugatory by reason of incorrect description of boundaries of the proposed division, the board of supervisors could not acquire jurisdiction by directing the county surveyor to draft a proper descrip-

tion and ordering a publication of such description embodied in a notice to the effect that a petition had been presented that the boundaries were incorrectly stated therein and that the then published description stated the boundaries correctly.

[14] ID.—ESTABLISHMENT OF BOUNDARIES OF DIVISION—CORRECT PUBLIC RECORD.—The making of a public record of the action of the board of supervisors in establishing the boundaries of a road division is required, and where the record upon the final hearing of the petition contained a description of an altogether different parcel of land from that included within the division by the final order of the board, and such description remained on the minutes until after the election held to authorize the tax, the proceedings were fatally defective.

[15] ID.—ELECTION TO AUTHORIZE LEVY OF TAX—ESTABLISHMENT OF ELECTION PRECINCT—TIME.—An election to authorize the levy of taxes for the improvement of highways in a road division is not void because the election precinct was established less than ninety days prior to the election.

[16] ID.—NOTICE OF ELECTION—PROPORTION OF TAX TO BE RAISED IN GIVEN YEAR—SUFFICIENCY.—The omission to state in a notice of election to authorize the levy of taxes for the improvement of highways in a road division what proportion of the whole tax was to be raised in any given year was immaterial where the notice showed that the election was to be held under the Road Division Act, which itself provides the proportion to be raised in each year where a three-year period for raising the tax is adopted.

[17] ID.—OPENING AND CLOSING OF POLLS—VOID ELECTION.—An election to authorize the levy of taxes for improvement of highways in a road division is void where the polls are not kept open for the time provided in the general election law, in view of the requirement of section 2756 of the Political Code that such elections shall be held in all respects as nearly as practicable in conformity with the general election law.

[18] ID.—PAYMENT OF TAXES — RIGHT OF PROTEST.—Taxes provided for in the Road Division Act may be paid under protest, and where illegally collected, recovered by the land owner from the county.

APPEAL from a judgment of the Superior Court of Orange County.  W. H. Thomas, Judge.  Reversed.

The facts are stated in the opinion of the court.

Allen & Weyl, Gray, Barker & Bowen and Donald Barker for Appellant.

L. A. West, District Attorney, W. F. Menton, Deputy District Attorney, Walter Eden, A. E. Koepsel and West, Koepsel & Eden for Respondent.

LENNON, J.—This action was brought by the plaintiff to recover money paid by it under protest to the tax collector of Orange County. The money was paid on a levy of taxes for the improvement of highways in the so-called Anaheim and Fullerton road division in that county. The complaint attacked the validity of the formation of the road division and of the proceedings for the levy of the tax. A general demurrer to the complaint was sustained by the trial court. The plaintiff having failed to amend, the court entered a judgment of dismissal in favor of the defendants. This appeal has been taken from that judgment.

The question of the sufficiency of the plaintiff's complaint to state a cause of action presents several problems for our consideration, the first of which is that of the constitutionality of the statute which authorizes the formation of road divisions. (Pol. Code, secs. 2745–2773.) If the statutory provisions are unconstitutional, the action of the county tax collector in demanding the money collected for the tax in question was wholly unwarranted, and it would follow that, if payment were properly protested under that section, the money so collected could be recovered pursuant to the provisions of section 3819 of the Political Code, which, as elsewhere stated in this opinion, was in effect incorporated into the Road Division Act by section 2759 of the Political Code.

Sections 2745–2773 of the Political Code provide, in effect, that the resident land owners of any portion of a county not already a part of a road division may petition the board of supervisors of the county to form thereof a permanent road division. Provision is made for a hearing upon due notice before the final action of the board, which may, in its discretion, and upon a hearing after due notice, change the boundaries of the proposed division either by exclusion or inclusion. At or after the formation of the division, ten or more resident land owners may petition the board of supervisors for the construction of road improvements. The board must then have plans made, estimate the cost of the improvement, and set aside a certain amount of the money of the road districts in which the division may be situated to apply

toward meeting the expense. It may in its discretion set aside other public moneys for the purpose. A special election to authorize the levy of taxes is then to be held on due notice, and if, at this election, a majority of the electors signify their approval of such levy, a tax is to be levied on all the property in the division. Such tax is to be computed and collected in the same manner as state and county taxes, and paid into the county treasury for the use of the division.

The plaintiff does not indeed deny that the tax so provided for is for a public purpose. It does, however, most earnestly insist that the statute authorizes a taking of property without due process of law, because the tax is made to fall unequally upon those holding property in the taxing division by reason of the fact that no provision is made that the burden of taxation shall be in proportion to the benefits derived from the road improvement for which the tax is to be levied. [1] It is conceded that it is not essential to the validity of a general tax that the burden be in proportion to the benefit derived. The contention of the plaintiff rests, therefore, upon the assumption that the tax provided for in the statute in question is a special assessment as distinguished from a general tax.

[2] The legislative intent to make the tax here in question a general tax is unescapably clear. Special assessments can be levied only on the specific property benefited and not on all the property in the district. (*Louisiana etc. Co.* v. *Madere,* 124 La. 635, [50 South. 609].) The basis of the imposition of a special assessment is the benefit inuring to the property assessed. (*Doyle* v. *Austin,* 47 Cal. 353.) Where, as here, therefore, the burden is imposed upon *all* of the property in the district, real and personal, according to its value and not upon the basis of special benefit, it is clear that the legislature regarded the burden as a general tax and not as a special assessment. This is so even though the tax be imposed for the purpose of constructing a public improvement which may confer greater benefits on one class of persons or property than on another. (*Williams* v. *Corcoran,* 46 Cal. 553.)

This being so, the question now presented for decision is the extent to which the legislative intent is controlling in the matter of determining whether a given tax is in fact a general tax or a special assessment. The plaintiff contends

that where the legislature provides for the creation of a small subdivision within a county for the sole purpose of providing means for making highway improvements therein which will be largely beneficial to the property owners in such subdivision, a tax levied therein must be held to be a special assessment, even in the face of a contrary intent expressed by the legislature. We do not so understand the law. [3] It is well settled that it is purely a question for the legislature to determine what shall be the territorial subdivisions of a state for taxing purposes, and that it is not within the province of the courts to hold that a tax amounts to a taking without due process of law solely on the ground that the property or person taxed is in a position where a proportionately small or even minute amount of benefit may be received. (*Kelly* v. *Pittsburgh,* 104 U. S. 78, [26 L. Ed. 658]; *Thomas* v. *Gay,* 169 U. S. 264, 278, [42 L. Ed. 740, 18 Sup. Ct. Rep. 340]; *Williams* v. *Eggleston,* 170 U. S. 304, 309–311, [42 L. Ed. 1047, 18 Sup. Ct. Rep. 617, see, also, Rose's U. S. Notes].) [4] We have no doubt that it was competent for the legislature to create, or rather to provide for the creation upon petition and after due hearing by the county supervisors of taxing districts for the construction of highway improvements and at the same time provide that the tax should be general if it appeared that some benefit would accrue to the property taxed. (*Lent* v. *Tillson,* 72 Cal. 404, 428, [14 Pac. 71]; *In re Madera Irr. Dist.,* 92 Cal. 296, 326, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]; *Bliss* v. *Hamilton,* 171 Cal. 123, 133, [152 Pac. 303].) [5] It follows from the rules established by the cases cited that the intent of the legislature that a tax shall be a general tax is controlling where it appears upon an analysis of the facts of the particular case that the tax is in fact for a public purpose and calculated to benefit the members of the taxing district in common with the public and not merely as individual property owners. [6] There being no question but that the tax provided for in the statute here in question is for a public purpose in the sense noted, it follows that the legislation in controversy is not in conflict with the provisions of the constitution of this state or of the United States prohibiting the taking of private property without due process of law.

While the order sustaining the demurrer is general, nevertheless it appears therefrom that the ruling of the lower

court rested in part upon the assumption that in levying and collecting the tax and in holding the moneys so collected the county officials were acting not in their respective capacities as county officers, but as *ex-officio* officers of a corporate entity separate from the county; that is to say, the Anaheim and Fullerton Road Division. [7] This was error. The road divisions formed pursuant to the provisions of the Political Code have no corporate existence *de jure* or *de facto*. It is not expressly provided in the code that road divisions shall have corporate existence. The contention of the county in this behalf must, therefore, rest upon the theory that the road division is a corporation by implication. [8] The doctrine of the creation of corporations by implication has been developed to save and make effective legislative acts which purport to confer powers which can only be exercised by a corporation upon bodies to which the legislature has neglected to specifically grant corporate existence. The doctrine is thus a remedial doctrine in that it is invoked to give effect and force to statutory provisions which would otherwise fail of accomplishing their purpose. Such being the nature of the doctrine, it should not be extended beyond those cases where that necessity appears to which the doctrine owes its origin and existence. If, therefore, in any given case, it appears that no express grant of corporate existence has been made, it should not be held that there is a grant of such existence by implication in the absence of a clear and affirmative showing that the legislative intent cannot otherwise be fully and fairly accomplished. (*Stebbins* v. *Jennings*, 10 Pick. (Mass.) 172, 188; *Walsh* v. *New York & Brooklyn Bridge*, 96 N. Y. 427; 1 Dillon on Municipal Corporations, 5th ed., p. 121.)

An analysis of the code provisions relating to the forming of road divisions reveals the fact that not only is there no provision for the exercise of any of the well-recognized corporate facilities by the division, but there is no requirement that the division as such shall do any corporate act of any sort. Section 2745 of the Political Code does indeed provide that a road division once formed shall have "the powers" enumerated in the act. But no powers are enumerated or conferred therein either expressly or by necessary implication. The first action contemplated by the statute after the formation of the division is the presenting of the petition for road construction. This is to be done by individual land

owners resident in the division. (Pol. Code, sec. 2751.) All subsequent acts are to be done by the county officials, nor is there anything in the statute to indicate that in performing the several acts directed they are not to be considered as acting in their respective official capacities. (Pol. Code, sec. 2752 et seq.) Indeed, the supervisors are directed to set apart money from the general funds of the county to apply toward defraying the expenses of construction. (Pol. Code, sec. 2753.) This is obviously an act which could not be performed by them as officers of the road division, as a separate legal entity, but could be performed only in their official capacity as supervisors. It is true that the money collected by means of the tax provided for in the statute is to be paid into the county treasury "for the use" of the division. (Pol. Code, sec. 2759.) This, however, is nothing more than a provision that the money so paid shall constitute a special fund for a special purpose. The existence of such a fund does not necessarily imply the existence of a corporate entity separate and distinct from the county as beneficiary, nor does it necessarily imply that the county officers in dealing with the fund are not acting in their official capacities as county officers. (*Gill* v. *City of Oakland*, 124 Cal. 335, [57 Pac. 150].) It is true that bonds are, under some circumstances, to be issued to finance the construction work, but they are to bear the signature of the county clerk and of the chairman of the board of supervisors, and there is nothing to indicate that in so signing they are not acting in their official capacities as county officers. (Pol. Code, sec. 2765.) It is also true that the bonds are to be payable only out of the funds of the division. (Pol. Code, sec. 2763.) This fact, however, does not affect the question we are discussing. (*Hellman* v. *Shoulters*, 114 Cal. 136, 145, [44 Pac. 915, 45 Pac. 1057].) It is also significant that the expenses not only of the formation of the division, but also of *all* the elections provided for in the statute are to be paid out of the general funds of the county. (Pol. Code, sec. 2772.) The purpose of the statute is to provide an alternative method for road construction. (Pol. Code, sec. 2773.) The act is no doubt to be construed liberally to enable the accomplishment of that purpose, but in order to accomplish the end named we fail to see why it is necessary to imply the existence of a corporate entity not specifically granted corporate powers by the statute.

The cases cited on this point on behalf of the defendant have no application to the case at bar. For the most part, they are cases involving a consideration of the corporate capacity of school districts. There is no doubt but that a school district is a corporate entity separate and distinct from the county. The county officers, as such, have no control over the funds of the school district. The power to make contracts payable out of the funds of the district is vested exclusively in the school board. The business of the district is managed independently of the board of supervisors by its own executive and administrative officials. Finally, school districts may sue and be sued separately. None of these undoubted attributes of corporate organization are granted to the road division by the statute here in controversy either by express words or by implication.

There is nothing in this conclusion inconsistent with the decision in *Dean* v. *Davis,* 51 Cal. 406. The court was there construing chapter 293 of the Statutes of 1867–68, which provided for the formation of levee districts. The electors of the district were authorized by that statute to elect an assessor and tax collector. These officials were not to be in any sense officers of the county. They were solely the officers of the district, and if it were held that the district had no corporate existence separate from the county, the whole purpose of the act would fail of accomplishment. Again, it was provided that the county surveyor was to perform certain services not in his official capacity as a county officer, but, as expressly stated in the act, as *ex-officio engineer* of the district. In fact, the whole tenor of the act indicated the intent of the legislature that the levee districts should have a separate corporate existence. On the other hand, the whole tenor of the statute here in controversy indicates that the legislature regarded the road division provided for therein as nothing more than a territorial subdivision of the county for the purpose of taxation for road improvements similar to improvement areas within municipalities such as those discussed in *Gill* v. *City of Oakland,* 124 Cal. 335, [57 Pac. 150], and in *Pasadena etc. Co.* v. *Lelande,* 175 Cal. 511, [166 Pac. 341]. [9] It follows that the tax here in question was, if valid, essentially a county tax for a special purpose, and that, therefore, the county is the only proper party to an action such as that brought by the plaintiff herein.

It is insisted on behalf of the defendant that the action of the board of supervisors of Orange County in forming the road division cannot be attacked collaterally, as is attempted here. In support of this contention, defendant cites 11 Cyc. 405. The rule there stated, however, and the rule which we believe is unquestioned, is that the action of a county board of a judicial or *quasi*-judicial nature is subject to collateral attack only on the ground of excess of jurisdiction. It is clear that when the board acts without jurisdiction, its action may be collaterally attacked. (*Fremont County* v. *Brandon,* 6 Idaho, 482, [56 Pac. 264].) [10] It may be conceded that the determination of a board of supervisors on a petition for the formation of a road division is of a judicial or *quasi*-judicial nature. (*Imperial Water Co.* v. *Supervisors,* 162 Cal. 14, [120 Pac. 780].) [11] The attack here made, however, is directed against the ·jurisdiction of the board of supervisors. It is contended on behalf of appellant that, by reason of alleged defects in the description of the boundaries of the proposed division as set forth in the petition as originally filed and published by the persons interested in the formation of the division, the board of supervisors never gained jurisdiction to proceed in the matter, and that, therefore, the complaint states a good cause of action. This contention must be sustained. Upon a careful analysis of the statute, we are convinced that the presentation and publication of a sufficient petition prepared by land owners resident within the proposed division was contemplated by the legislature as an indispensable prerequisite to any action taken by the board of supervisors. The hearing prescribed by the statute would be no more than an idle ceremony if definite boundaries of the proposed division were not to be so published prior to the hearing as to enable all land owners within such division to ascertain whether or not their property was included within the proposed boundaries. The statute, on the one hand, expressly makes it the duty of the majority of the land owners residing within the proposed division to prepare a petition containing the boundaries of the division, while, on the other hand, it does not authorize the board of supervisors to perform a single act until after the presentation and publication of the petition. It follows that if the petition, as originally presented and published, was vitally defective in its description of the boundaries of the proposed division, the

board of supervisors was without jurisdiction to consider the merits of the petition.

[12] Confining our attention, therefore, to the petition as alleged to have been originally published, we are constrained to hold that the description contained therein was such as to render the petition vitally defective. The description set forth by courses and distances in the petition assumed to fix the eastern and western boundaries of the proposed division as lines respectively one-quarter of a mile east and one-quarter of a mile west of the middle line of a certain highway and parallel to such middle line. Appellant contends that this description is ambiguous, for the reason that the highway in question does not form a straight line between the proposed northern and southern boundaries of the division, but runs for a portion of the distance from north to south and for a portion of the distance from northwest to southeast, and that it is impossible to tell whether the lines were drawn parallel to the line of center measuring at right angles to such line of center and in an easterly and westerly direction, or whether they were to be drawn parallel to the line of center measuring due east and due west. This contention cannot be sustained. In the absence of other words qualifying their meaning, the words "east" and "west," as used in the petition, must be construed as meaning due east and due west. (*Bosworth* v. *Danzien,* 25 Cal. 296; *Pratt* v. *Woodward,* 32 Cal. 219, [91 Am. Dec. 573]; *Jackson* v. *Reeves,* 3 Caines (N. Y.), 293; *Brandt* v. *Ogden,* 1 Johns. (N. Y.) 156. Cf. Cal. Pol. Code, sec. 3903.) The description of the boundaries of the proposed division by courses and distances is, however, followed by the statement that "the boundaries of the said division are also more particularly shown by a plat or map of said division, attached hereto, to which reference is hereby made." This map, while in general following the initial description by courses and distances, deviates materially therefrom in many important particulars. Thus, with relation to the land of the appellant, the deviation is very substantial, a much larger portion of its land being included in the proposed division as indicated in the map than would be included under the initial description by courses and distances. From the intent of the petitioners themselves as indicated by the words "more particularly shown," and also by the application of general rules of construction, it is clear

that the description by courses and distances is governed and controlled by the description as set forth in the map. (Code Civ. Proc., sec. 2077; 5 Cyc. 524, 525; *Vance* v. *Fore,* 24 Cal. 435.) If, then, the map, or a description by courses and distances of the boundaries as indicated therein, had been published as part of the petition, it cannot be doubted but that the board of supervisors would have had jurisdiction to proceed in the matter. It sufficiently appears from the complaint, however, that the only description published was that by the courses and distances of the initial description. The complaint, therefore, in effect, alleges that the petition, as published, contained a description differing essentially from that contained in the petition as originally filed and presented. While the petition, as published, contained a clear and definite description of the boundaries of the proposed division, it was a description wholly incorrect and misleading which in no sense satisfied the statutory requirement that the petition, as published, should contain the true boundaries. The original publication was, therefore, wholly nugatory.

Clearly, then, the complaint alleges facts which show that the board of supervisors was without jurisdiction to consider the petition at the date originally set for the hearing. It appears from the complaint, however, that, on that date, the board directed the county surveyor to draft a description by courses and distances designating the boundaries delineated on the map, and ordered a publication of that description embodied in a notice to the effect that a petition for the formation of a road division had been presented, that the boundaries of the proposed division were incorrectly stated therein, that the then published description stated the boundaries correctly, and that the board would hear the petition on a certain date. This obviously, was wholly insufficient as a publication or republication of the petition. **[13]** The original publication having been wholly nugatory, and the petition never having been republished, it follows that the board of supervisors never acquired jurisdiction to pass upon the merits of the petition.

Appellant claims that a further defect in the proceedings affecting the validity of the tax appears from the facts alleged in the complaint. In this behalf, it is alleged that the minute record of the board of supervisors upon the final hearing of the petition contained a description of an altogether

different parcel of land from that included within the division by the final order of the board and that this description remained upon the minutes until after the election held to authorize the levy of the tax. The making of such a record is expressly required by statute. (Pol. Code, sec. 4039.) No other record of the action of the board of supervisors in establishing a road division is provided for. [14] Inasmuch as an election whereby property may be made subject to sale for taxes would be confiscatory were no means provided whereby it could be definitely determined in advance of the election what property would be affected by the election, it follows that the making of a public record of the action of the board in establishing the boundaries of the division was not only expressly required by the legislature, but was also essential to due process of law. The facts alleged in the complaint, therefore, present a situation where a record required by statute and essential to due process of law was wholly incorrect and misleading and so remained at all times prior to the election. It is contended on behalf of respondent that because the files contained papers setting forth the accurate description of the division as finally formed by the order of the board, the burden is upon appellant to show that the error in the record actually misled some of the electors. This contention is without merit. The electors had a right to rely upon the record. They were not bound to corroborate its statements by an examination of the files. "The law requires a record to the end that those who may be called to act under it may have no occasion to look beyond it." (*Sawyer* v. *Manchester etc. R. R. Co.*, 62 N. H. 135, [13 Am. St. Rep. 541].)

It appears from the complaint that the order of the board establishing the Anaheim and Fullerton road division as an election precinct was made on November 18th and that the election was held on December 27th. Since it appears that section 2756 of the Political Code provides that such elections shall be held in all respects as nearly as practicable in conformity with the general election laws by which it is required that election precincts be established ninety days prior to the election (Pol. Code, sec. 4041, subd. 3), it is contended that the election here in question was void by reason of the fact that the precinct was established less than ninety days

prior to the election. The same contention was made under similar circumstances in *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351, 362, [21 Pac. 825], and was there held to be without merit. [15] That decision is directly in point and fully disposes of the contention of the plaintiff in the instant case.

It appears from the complaint that the notice of election stated that the purpose of the election was to determine whether a special tax should be levied to be raised in one, two, and three succcessive years, but it was not stated what proportion of the whole was to be raised in any given year. [16] This omission was immaterial if it appeared from the notice that the election was to be held under the Road Division Act, for the act itself provides the proportion to be raised in each year where a three-year period for raising the tax is adopted. (Pol. Code, sec. 2754.) It is contended, however, that it did not appear in the notice of election under what one of three possible road improvement acts the election was to be held. Upon an examination of the notice, which is appended to the complaint as ''Exhibit D,'' we are constrained to hold that the contention is without merit.

[17] The complaint alleged, in effect, that the election in question was void because of a failure to observe the requirement of the general election law relative to the time of opening and keeping open the polls. (Pol. Code, sec. 1160.) The defendant concedes, as indeed it must be conceded, that the Road Division Act required that the election in question should ''be held in all respects as nearly as practicable in conformity with the general election law.'' (Pol. Code, sec. 2756.) The general election law required the polls to be open from 6 A. M. to 7 P. M. (Pol. Code, sec. 1160.) The notice of election in the present case—evidently inadvertently prepared pursuant to subdivision 3 of section 2761 of the Political Code—as set forth in ''Exhibit D'' of the complaint, shows that the supervisors ordered the polls to be kept open from 8 A. M. to 4 P. M., and it appears from the allegations of the complaint that they were so kept open and not otherwise. The contention made upon behalf of the defendant in support of the validity of the election is that, notwithstanding the departure from the requirement of the general law, the keeping of the polls open for eight hours in the middle of the day was a substantial compliance with the law.

This contention cannot be maintained for the reasons stated in the case of *People* v. *Town of Larkspur,* 16 Cal. App. 169, 177, [116 Pac. 702, 706], where it is said: "We think the principles enunciated in the well-considered case of *Kenworthy* v. *Mast,* 141 Cal. 268, [74 Pac. 841], are decisive of the question. The general rule laid down in McCrary on Elections, section 165, is quoted approvingly, namely, that where there is no statutory provision expressly declaring that a failure, in the respect now being considered, shall render the election void, it will be regarded as directory only, and that, unless the deviation from the legal hours has affected the result, it will be disregarded, but that if such deviation is great, or even considerable, the presumption will be that it has affected the result and the burden will be upon him who seeks to uphold the election to show affirmatively that it has not." Obviously, the deviation pleaded in the present case was great, and, consequently, applying the rule above quoted, the complaint, in that particular, stated a cause of action.

It is finally urged, however, on behalf of the defendant that, even if the complaint does state a cause of action in the particulars stated, it affirmatively appears that the tax was paid before it became delinquent and that there was no threat shown and no power existent on the part of the tax collector to enforce the collection at that time, wherefore the payment must be considered as having been made voluntarily. The complaint alleges that the payment of the tax was protested under the provisions of section 3819 of the Political Code. If the tax provided for in the Road Division Act may be so protested, the payment cannot be considered voluntary. [18] We are of the opinion that the tax may be so protested. It is true that it is nowhere expressly provided in the act that the provisions of section 3819 shall be held to apply. It is, however, provided that the tax shall be computed and collected in the same manner as state and county taxes. (Pol. Code, sec. 2759.) The provisions of section 3819 for the payment of void taxes under protest are a part of the general scheme for the collection of taxes. It follows that section 2759 of the Political Code amounts to an incorporation of these provisions into the Road Division Act, so that an action can be maintained against the county to recover illegal taxes assumed to have been collected pursuant to the act and pro-

tested under the provisions of section 3819.   (*Hellman* v. *City of Los Angeles,* 147 Cal. 654, [82 Pac. 313].)

The judgment is reversed and the cause remanded, with instructions to the lower court to overrule the demurrer with leave to the defendant to answer within a specified time.

Wilbur, J., Shaw, J., Melvin, J., Angellotti, C. J., Lawlor, J., and Olney, J., concurred.