[Civ. No. 2450. Third Appellate District.—June 21, 1922.]

# RECLAMATION DISTRICT No. 108, Petitioner, v. GEORGE ASH et al., Respondents.

[1] PROHIBITION—JURISDICTION.—Having once issued an alternative writ of prohibition and thus signified its willingness to entertain the proceeding, a district court of appeal will not dismiss such proceeding merely because the subject matter to which the writ pertains is solely of equitable cognizance and of which the supreme court has exclusive appellate jurisdiction, subject, of course, to the constitutional right of the latter court to transfer the cause involving such subject matter to a district court of appeal for hearing and decision.

[2] RECLAMATION DISTRICTS—ASSESSMENT—HEARING—JUDICIAL FUNCTION OF SUPERVISORS.—In the hearing upon a reclamation district assessment as reported by the assessment commissioners, the board of supervisors acts in a judicial or *quasi*-judicial capacity.

[3] ID.—EXCESS OF JURISDICTION.—A writ, whose office is to test the question whether any board, corporation, or tribunal has, in the exercise of judicial or *quasi*-judicial functions, exceeded its jurisdiction, or threatens to do so, in a given matter, will lie either to annul proceedings resulting from the unlawful exercise of such power or prevent such board or tribunal from acting in the premises, provided, of course, that there is not, as to the matter as to which the alleged usurpation or attempted usurpation of power has been or is about to be taken, a plain, speedy, and adequate remedy in the ordinary course of law.

[4] ID.—REVOCATION OF ORIGINAL PLANS—INVALIDITY OF ASSESSMENT BASED THEREON—PROHIBITION.—Where reclamation district plans and estimates have been rescinded and revoked by the board of

trustees and been superseded by new plans and estimates which in many respects are entirely different from the former, an apportionment of an assessment based upon the former plans and estimates would not be a just apportionment of an assessment based upon the new plans and estimates; and a writ of prohibition will lie to restrain the board of supervisors from proceeding with the hearing of a purported assessment as reported by the assessment commissioners, based upon the rescinded plans and estimates.

[5] ID.—VALIDITY OF PLANS—ATTACK—PARTIES.—The question of the validity of plans adopted for reclamation and irrigation works in combined reclamation and irrigation districts can be raised only by those who are directly interested in and affected by the provisions of said plans.

[6] ID.—INVALIDITY OF LATER PLANS—EXAMINATION BY COURT IN PROHIBITION PROCEEDING.—If reclamation district plans and estimates are absolutely void upon their face and the proper determination of the question whether the board of supervisors is without jurisdiction to hear objections to an assessment based upon previously adopted plans and estimates or to take any other proceeding with reference thereto would require an examination of the later plans and estimates, with a view of ascertaining whether they are valid under the law, such examination may be made by the court in a proceeding on prohibition to restrain the board of supervisors from proceeding to a hearing on said assessment, notwithstanding the land owners of the district are not parties thereto.

[7] ID. — DUTY OF WATER — EXCESS OF JURISDICTION — VALIDITY OF PLANS.—Conceding that the trustees of a reclamation district exceed their lawful power or authority in attempting to establish the particular quantity of water and the source and duty thereof which a particular district shall be entitled to, this will not invalidate the entire plan, but may be regarded as wholly surplusage.

[8] ID.—DEPRIVATION OF WATER—REMEDY OF LAND OWNER.—If the trustees of a reclamation district, in attempting to establish in the plan the particular quantity of water and the source of duty thereof, deprive any area or portion of the lands in the district of its just and necessary proportion of the water available to the district for its purposes, the land owners thus aggrieved may prevent such wrong by an appropriate action in the courts.

APPLICATION for a Writ of Prohibition to restrain a board of supervisors from proceeding to a hearing on a reclamation district assessment.   Writ granted.

The facts are stated in the opinion of the court.

Devlin & Devlin and Hiram W. Johnson, Jr., for Petitioner.

Arthur C. Huston, Charles K. Atran, Millington & Millington and Seth Millington for Respondents.

Elston, Clark & Nichols, *Amici Curiae.*

HART, J.—This is an original application for a writ of prohibition to restrain the respondents, as members of the board of supervisors of the county of Colusa, from further proceeding in connection with a purported assessment list, filed with said board by the commissioners of assessment in and for the petitioner herein on the fifth day of December, 1921, and from proceeding with the hearing of said purported assessment and from making any order in connection therewith.

The petitioner is a duly formed, organized, and existing reclamation district under the laws of the state of California, which said district embraces, and has at all times mentioned in said petition embraced, lands situated partly in the county of Colusa and partly in the county of Yolo, the larger part of said lands being situated within the limits of the said county of Colusa; that said district was reorganized in the year 1917, and that all the lands therein are now, and at all times mentioned in the petition have been, situated within the boundaries of the Sacramento and San Joaquin Drainage District. The board of trustees of said district on August 31, 1917, adopted a plan of reclamation for the lands situated in said district, together with estimates of the sums of money required to carry the same into execution, and within due legal time filed said plan and estimates as required by law with the clerk of the board of supervisors of the county of Colusa, and thereupon the said clerk certified two copies thereof to the reclamation board of the state of California. After due hearing and due legal notice given the said plan was approved by the said reclamation board and thereafter, in the month of November, 1918, the said board of trustees reported the fact of the approval of said plan by the said reclamation board to the board of supervisors of the county of Colusa. Thereafter, and in the month of November,

1918, the board of supervisors appointed L. L. Hicok, H. L. Haehl, and Charles de St. Maurice as commissioners of assessment, pursuant to section 3456 of the Political Code, for the purpose of levying an assessment based upon said plan and estimates and thereafter the said commissioners of assessment duly qualified as such. On the 19th of August, 1920, the board of trustees of said reclamation district adopted a new, supplemental, and additional plan of reclamation for the lands situated within said district, together with estimates of cost of said works of reclamation and irrigation of said district, and certain modifications and amendments to the existing plan adopted on the thirty-first day of August, 1917. The said new or supplemental plan and modification was filed with the board of supervisors and subsequently with the state reclamation board as required by law, and said new or additional or supplemental plan was, within due time, approved by the last-named board and the fact of such approval reported to the board of supervisors of said county of Colusa by petitioner. Thereafter the board of supervisors made an order appointing the said Hicok, Haehl, and de St. Maurice as commissioners of assessment.

The petition alleges that, on the twenty-seventh day of September, 1921, the board of trustees of petitioner "did by a resolution, duly adopted on the said day, rescind, vacate and set aside the said plan and estimates of August 31, 1917, hereinbefore referred to, also the plan and estimates of August 19, 1920, hereinbefore referred to." The petition then sets forth the resolution just referred to, and, after reciting the facts as to the plan and estimates adopted in August, 1917, and the supplemental and additional plan adopted in August, 1920, it proceeds:

"Whereas, it now appears that the said plans adopted by the said board of trustees on the 31st day of August, 1917, and the said plans adopted by the said district on the 19th day of August, 1920, when construed together, contained ambiguities and uncertainties and that by reason thereof the intent of said board of trustees in connection with the said plan of August 31st, 1917, and the said plans of August 19th, 1920, is not clearly expressed, and

"Whereas, it was the intent of the said board of trustees in the said plans of August 19th, 1920, that the drainage

58 Cal. App.—16

ditches of said Reclamation District No. 108 should not be used as being part of said irrigation system of the said district, but that a separate system of irrigation canals should be constructed so as to irrigate exclusively the area of lands described in the said plans of August 19th, 1920, and

"Whereas, this intent of the said board of trustees is not clearly expressed in the said plans adopted on August 19th, 1920, and when construed with the plans adopted on August 31st, 1917, and

"Whereas, in the plans adopted on August 19th, 1920, certain tracts of lands described in the area to be irrigated cannot be irrigated when said plans are completed as there are no irrigation canals leading to the same or provided in any of said plans, and

"Whereas, the estimates contained in the said plans of August 31st, 1917, and of August 19th, 1920, required revision and changes and, whereas, there are other reasons in addition to the reasons above enumerated, requiring that the said plans and estimates adopted on August 31st, 1917, and the said plans adopted on August 19th, 1920, should be rescinded, vacated and set aside and that the respective resolutions of the board of trustees adopting the said plans of August 31st, 1917, and the said plans of August 19th, 1920, should likewise be rescinded, vacated and set aside.

"Now, therefore, be it resolved, by the board of trustees of Reclamation District No. 108,

"First: That the said plans of August 31st, 1917, hereinbefore referred to, together with the estimates therein contained, and the resolution of the board of trustees of said district adopting the same be, and the same are hereby rescinded, vacated and set aside.

"Second: That the said plans of August 19th, 1920, hereinbefore referred to, together with the estimates therein contained, and the resolution of the Board of Trustees of said district adopting the same be, and the same are hereby rescinded, vacated and set aside.

"Third: That a copy of this resolution certified to by the Secretary of the board of trustees of said district be forthwith filed in the office of the Clerk of the Board of Supervisors of the County of Colusa, State of California, and a similar copy so certified to by the secretary of said

district be forthwith filed in the office of the Secretary
of the Reclamation Board of the State of California and
that similar copies so certified be forthwith delivered re-
spectively to H. L. Haehl, Chas. de St. Maurice and L. L.
Hicok, the three Commissioners of Assessment appointed
by the Board of Supervisors of the County of Colusa, State
of California, and now acting in apportioning the assess-
ment required by the said plans of August 31st, 1917, and
the said plans of August 19th, 1920, both of which have
this day been rescinded, vacated and set aside.''

It is alleged in the petition that immediately upon the
adoption of the foregoing resolution the said board of trus-
tees caused to be filed in the office of the board of super-
visors of said county of Colusa a certified copy of the said
resolution and also with the reclamation board of the state
of California, and delivered a certified copy to each of said
commissioners of assessment. It is further alleged that on
the twenty-seventh day of September, 1921, the board of
trustees of said district, in pursuance of said resolution,
adopted a resolution directing the engineer of the said dis-
trict to prepare a new set of plans and estimates, in ac-
cordance with which resolution said engineer did, on the
nineteenth day of October, 1921, present a new plan and
estimates of the sum of money required to carry the same
into execution to the said trustees of the said district; that
on the nineteenth day of October, 1921, said board of trus-
tees adopted the same as the plan of reclamation in said
district and also the estimates as therein contained; that
the total estimate of the sum required for the consumma-
tion of said plan is the sum of $3,137,336.54. The resolu-
tion adopting said plan is set out *in haec verba* in the
petition and contains, among other things, a provision that
said amendatory and additional plan and estimates shall
and ''do hereby supersede, in all particulars, the plan
and estimates of said reclamation district'' which were
adopted on August 31, 1917, and also those adopted on
August 19, 1920. It also provided: ''That said amendatory
and additional plan and estimates be filed in triplicate
with the County Clerk of the County of Colusa, State of
California, in accordance with the provisions of law, and
that necessary steps be taken for the approval of the
amendatory and additional plans and estimates before the

Reclamation Board of the State of California and when so approved that the necessary steps for the appointment of commissioners of assessment for the Board of Supervisors of the County of Colusa, . . . be had in accordance with the provisions of law." The said plan and estimates (those last adopted) were filed with the board of supervisors of the county of Colusa and the state reclamation board as required by law.

The petition further alleges that upon the adoption of the latest plan and estimates the said board of trustees prepared and filed with the county clerk of the county of Colusa a report of the adoption of said amendatory and additional plan and estimates, the same containing the said plan and estimates, which said report contained recitals to the effect that the amount of money required by said estimates is the sum of $3,137,336.54; that all the lands situated within said reclamation district are situated within the boundaries of the Sacramento and San Joaquin Drainage District, and that said amendatory and additional plan and estimates supersede in all particulars the plans and estimates, original and amendatory, previously adopted by the board of trustees of said district.

It is further alleged that said plan and estimates were duly certified to the reclamation board of the state by the clerk of Colusa County; "that the said plan and estimates so adopted on the 19th day of October, 1921, by the board of trustees and so filed with the clerk of the said Board of Supervisors on the 20th day of October, 1921, embrace some of the items and estimates contained in the plan and estimates of August 31, 1917, and also contained in the new, supplemental and additional plan and estimates of August 19, 1920, but also contain many other items and estimates of a different kind, and some of the items and estimates contained in said plans of August 31, 1917, and August 19, 1920, were modified and changed"; that on December 30, 1921, the reclamation board of the state of California, after due hearing, made an order approving said plan and estimates of October 19, 1921.

The petition alleges that, "notwithstanding the facts hereinbefore averred, the said commissioners of assessment did, on the 5th day of December, 1921, with said board of supervisors, file a purported assessment upon the lands

within the said Reclamation District No. 108 based upon
the said plan and estimates of August 31, 1917, and the
said plan and estimates of August 19, 1920, and that on
the said 5th day of December, 1921, the said respondents,
as members of and as constituting the Board of Supervisors
of the County of Colusa, . . . , set the said assessment for
hearing for Wednesday, the 21st day of December, 1921,
. . . and gave notice that at such time any land owner
would be heard in connection with and concerning said as-
sessment, and on said December 21, 1921, continued the
hearing until January 4, 1922,'' and that said respondents
intend, on the day last mentioned, to proceed to equalize
the said assessment upon the assumption that the plans and
estimates of August 31, 1917, and August 19, 1920, re-
spectively, are still in full force and effect, and when said
hearing is completed, to make an order equalizing the said
assessment and to deposit the said assessment list with
such order of approval indorsed thereon in the office of the
county treasurer of the county of Colusa and also in the
office of the county treasurer of the county of Yolo, and
that ''thereupon the said purported assessment will become
a colorable lien upon the lands within such district to the
extent of the amount levied upon each tract of land as de-
scribed in said purported assessment.'' It is finally alleged
that ''there is no plan or estimates upon which such as-
sessment can be based, and, therefore, the said respondents
and the said Board of Supervisors of the County of Colusa,
. . . are acting without jurisdiction in having such trial
and hearing upon the said purported assessment so filed.''

The respondents, upon the return day of this writ, filed
a general demurrer to the petition and also filed the plan
and estimates adopted on October 19, 1921. It was stipu-
lated that the said plan and estimates might be considered
in the determination of the questions arising upon the de-
murrer.

· We may first dispose of the proposition, urged by coun-
sel for respondents, that this proceeding should be dis-
missed, for the reason, as suggested, that ''the supreme
court has original jurisdiction in this matter and as a mat-
ter of practice the petition should be presented to that
court.'' The answer to this suggestion is to be found in
article VI, section 4, of the constitution, which expressly

vests in the district courts of appeal the authority to issue writs of prohibition. In *Favorite* v. *Superior Court of Riverside Co.*, 181 Cal. 261, 265 [8 A. L. R. 290, 184 Pac. 15, 16], it is said, speaking of a like suggestion: "As a matter of policy and practice, both this court and the district courts, respectively, have at times refused to take jurisdiction of an original proceeding where the case involved was in the superior court and was originally appealable to the other court. (*Collins* v. *Superior Court,* 147 Cal. 264 [81 Pac. 509]; *Estate of Turner,* 39 Cal. App. 56 [177 Pac. 854].) But this practice was not adopted because of any want of original jurisdiction in such cases in either court. This was expressly stated in the Collins case."

[1] Therefore, having once issued the alternative writ and thus signified its willingness to entertain the proceeding, a district court of appeal will not dismiss such proceeding merely because the subject matter to which the writ pertains is solely of equitable cognizance and of which the supreme court has exclusive appellate jurisdiction, subject, of course, to the constitutional right of the latter court to transfer the cause involving such subject matter to a district court of appeal for hearing and decision.

It is, however, urged by counsel, appearing *amici curiae,* in opposition to the issuance of the writ, that the petitioner has a remedy in the ordinary course of law—that is to say, that section 3462 of the Political Code affords a complete and adequate remedy by providing that "any person aggrieved by the decision of the board of supervisors (on the hearing of the objections to the assessment lists) may commence an action in the superior court of the county in which the greater part of said district is situated to have said assessment corrected, modified or annulled." We do not agree with counsel in this contention.

[2] In the hearing upon the assessment as reported by the assessment commissioners, the board of supervisors act in a judicial or *quasi*-judicial capacity, since, in the performance of the duty of equalizing the assessment upon written objections made by the owners of land embraced within the district to the apportionment of the assessment as made by the assessment commissioners, the board sits for the purpose of hearing and determining controverted

facts. (*Robinson* v. *Board of Supervisors of Sacramento County*, 16 Cal. 208; *Imperial Water Co.* v. *Board of Supervisors etc.*, 162 Cal. 14 [120 Pac. 780]; *Pacific Tel. & Tel. Co.* v. *Eshleman*, 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *Anaheim Sugar Co.* v. *Orange County*, 181 Cal. 212 [183 Pac. 809]; *Suckow* v. *Alderson*, 182 Cal. 247 [187 Pac. 965].)    [3]  It follows that a writ, whose office is to test the question whether any board, corporation, or tribunal has, in the exercise of judicial or *quasi*-judicial functions, exceeded its jurisdiction, or threatens to do so, in a given matter, will lie either to annul proceedings resulting from the unlawful exercise of such power or prevent such board or tribunal from acting in the premises, provided, of course, there is not, as to the matter as to which the alleged usurpation or attempted usurpation of power has been or is about to be taken, "a plain, speedy and adequate remedy in the ordinary course of law." (Secs. 1068 and 1103, Code Civ. Proc.)

[4]  Furthermore, it is clear that, if the present plan and estimates are in all respects valid, the assessment made and returned by the assessment commissioners and now pending before the board of supervisors for hearing and which it is alleged in the petition the said board intends, if not restrained from so doing, to consider and definitively pass upon, having been made with reference to the plan and estimates adopted in the year 1917, as amended in the year 1920, is, so far as the present plan and estimates are concerned, wholly nugatory and void. This conclusion, upon the assumption stated, is justified by the allegations of the petition, which are admitted to be true by the demurrer, that the plan and estimates adopted in 1921, while embracing some of the items and estimates contained in the previous plans and estimates, "also contain many other items and estimates of a different kind and some of the items and estimates contained in the said plans of August 31, 1917, and August 19, 1920, were modified and changed." Thus it is readily to be noted that an apportionment of the assessment, based upon the previous plans and estimates, cannot be held to operate as a just apportionment of an assessment made upon a plan and estimates in many respects entirely different from the former. It is,

therefore, obvious that the legal propriety of the remedy here sought cannot justly be questioned. Indeed, it is clear that said remedy is peculiarly appropriate to the situation presented here for the reason that, again assuming that the present plan and estimates are perfectly valid, the approval of the assessment lists in question and the filing of the same with the county treasurers of the two counties into which the district extends would operate, *ipso facto,* to burden the lands in the district with an illegal yet colorable lien. This situation might lead to much confusion and many complications which would stand as a barrier against the progress of the work of reclamation. For instance, it might, and probably would, result in a multiplicity of suits against land owners to recover the assessments and this certainly would impede the progress of the work required to effectuate the purposes designed by the organization of the reclamation district.

The respondents take the position in this discussion, among others, that the plan and estimates adopted in October, 1921, are invalid upon their face and that, this being true, the plan of 1917, as amended by the plan of 1920, is still in full force and effect, and that, inasmuch as the commissioners of assessment made their assessment upon said last-mentioned plan and reported the same to the board of supervisors, it is the duty of the board and within its jurisdiction under the law to proceed with the equalization of the assessment as so reported. On the other hand, the petitioner contends that the question of the validity or invalidity of the plan of 1921 cannot be inquired into in this proceeding; that, since the board of supervisors has no power to pass upon the question of the validity of any plan of reclamation adopted by a reclamation district and its duty with reference to said plan after the same has been duly adopted by the board of trustees of the district and approved by the state reclamation board is merely to hear objections to the assessment as reported by the assessment commissioners and to perform such other acts with reference to said assessment as are set forth in section 3462 of the Political Code, it cannot complain or raise the question of the validity of the plan adopted or the action of the board of trustees in adopting it. Of course, as the attack upon said plan and estimates in this proceeding is in

its nature collateral, their invalidity, if invalid they be, must appear upon the face thereof, otherwise they are not subject to attack herein. In this connection, it should be stated that counsel for the petitioner declare that, "while it is true that the plan of October, 1921, was filed and it was stipulated that it might be regarded as a part of the record, nevertheless, this was done purely to aid the court in the better understanding of the facts set forth in the petition and not with the idea that the court could pass upon the sufficiency of said plan or the right of the respondents, or any land owner, to contest the same or any part thereof" in this proceeding, since, so counsel proceed, "such a question would be foreign to the jurisdiction of the board of supervisors."

[5] Abstractly speaking, the petitioner is right in its contention that the question of the validity of plans adopted for reclamation and irrigation works in combined reclamation and irrigation districts can be raised only by those who are directly interested in and affected by the provisions of said plans (*Town of Antioch* v. *Williams Irr. Dist.*, 188 Cal. 451, 205 Pac. 688; *City Council of City and County of Denver* v. *Board of Commrs. of Adams Co.*, 33 Colo. 1 [77 Pac. 858, 860]; *People* v. *Ames,* 24 Colo. 422 [51 Pac. 426]; *Ames* v. *People,* 26 Colo. 83 [56 Pac. 656]; *People* v. *Salomon,* 54 Ill. 39.) [6] But this is not to say that if the plan and estimates of a reclamation district be void upon their face, the same may not be ignored by the board of supervisors or so held to be in a collateral proceeding before a court where the question of their validity is vital to the determination of the ultimate issue submitted therein for decision. If the plan of October, 1921, were absolutely void upon its face and the proper determination of the question whether the board of supervisors of Colusa County was without jurisdiction to hear objections to the assessment based upon the previously adopted plan of the district or to take any other proceeding with reference thereto would require an examination of said plan of 1921, with a view of ascertaining whether it was a valid plan under the law, we can conceive of no reason why we would not be authorized to make such examination and determination in this proceeding, despite the fact that those directly

interested in and affected by said plan—the land owners of the district—are not parties hereto.

But we are of the opinion that the plan as it is exhibited to us here is not absolutely void. And, preliminarily, we may take occasion to say that, when, at the oral argument, it was stipulated that the plan and estimates of 1921 might be considered by us in the decision of the question of jurisdiction submitted herein, we did not understand that such consideration was to be limited in its scope as indicated by counsel for the petitioner. Counsel for the respondents raised and argued the question of the invalidity of the plan of 1921 in support of their position that the board of supervisors of Colusa County would act within its lawful jurisdiction in hearing and determining such matters as the law requires that body to hear and determine in connection with the assessment lists reported to said board by the assessment commissioners and distinctly stated that he would submit with his argument said 'plan to the court, to the end that the question whether the plan was invalid might be inquired into and determined. And counsel for the petitioner thereupon stipulated that the said plan might be so submitted. We will, therefore consider the plan in passing upon the demurrer to the petition and briefly express the reason for our conclusion that the plan and estimates of October, 1921, are not invalid.

We may first observe that it is not claimed here that the board of trustees was without authority to adopt an amendatory or a supplemental plan to supersede the plans of 1917 and 1920. Indeed, such right in the said board of trustees cannot justly be challenged in view of the provision of section 3455 of the Political Code to the effect that a board of trustees of a reclamation district may *at any time* file with the clerk of the county an amendatory, additional, or supplemental plan, or even an entirely new plan (sec. 3454, subd. 6, Pol. Code [Stats. 1917, p. 1195]), and this right would, of course, imply the further right in the board to so revise the estimates as to make them accord with the amendatory or supplemental plan and thus change the basis of the assessment. But the objection that respondents make to the said plan, stating it in general terms, is that the board of trustees of the district has reserved to or invested itself with unauthorized power in the

matter of the distribution of the water of the district
for irrigating purposes and the use of the drainage ditches
involved in the plan. In other words, and employing
counsel's own language, the position of respondents is this:

"The board of trustees, as appears on the face of the new
plan, has not been satisfied to perform its statutory duty
but has assumed the jurisdiction and power to attempt to
control the use of water dedicated to lands in the district;
to limit and define the enjoyment of the drainage ditches
called for in the plan; to ascertain and determine the duty
of water in connection with the irrigation works; to de-
termine that certain lands heretofore irrigated shall not re-
ceive water under the new plan, and in many other ways
to unlawfully reach out and control the property rights
of the individual land owners."

It is not necessary to enter into a detailed examination
herein of the plan or even those portions thereof which it
is claimed involve the exercise of unwarranted power by
the board of trustees of the district for the purpose of
considering the point now in hand. It is deemed sufficient,
for the purposes of this decision, to explain, in a very gen-
eral way, the grounds upon which the asserted invalidity
of the plan is based.

Acting under the authority of the provision of section
3455 of the Political Code, as amended by the legislature of
1917 (Stats. 1917, p. 1197), providing that the term "works
of reclamation," as used in said section, shall include not
only such public works, etc., as are necessary for the unwater-
ing of lands in reclamation districts but shall also include
such like works as may be necessary to water or irrigate
the same lands in such districts, the board of trustees, for
the purpose, as they seem to have conceived, of facilitating
the irrigation of the lands comprising the district in ques-
tion without impinging upon the just rights or the require-
ments as to irrigation of any of the land owners therein
or imposing upon any particular tracts of land in the dis-
trict more than their just burden for such irrigation, sub-
divided said district into five units or subdivisions. The
principal basis of such subdivision is in the nature as
well as the convenience of the source of the water supply
available to each unit. These several units were and are
designated as follows: First, the Wilkins Slough system;

second, the Boyer's Bend system; third, the Tyndall system; fourth, the El Dorado Bend system; fifth, the Steiner Bend system. In some of these units the lands are riparian, while in others the lands are nonriparian. It appears that the district obtained a permit from the State Water Commission to divert from the Sacramento River sufficient water for irrigating approximately 30,000 acres of land in said district. These last-mentioned lands are situated entirely within the Wilkins Slough unit. In apportioning the water rights of the district in the plan of 1921 the board of trustees specifically and definitely declared that "no portion of land and no portion of any tract of land lying outside of the boundaries described above as parcels 'A' and 'B' shall be irrigated by the Wilkins Slough system as herein described and no owner of any such land lying outside of said boundaries shall be permitted or authorized to use for any purpose whatsoever any of the water in the irrigation canals in said system." It is then provided that, as to the duty of water "the five hundred second feet of permit No. 388 will be diverted through the system for the service of the 30,210 acres in parcel 'A' described above, giving an average duty of water of about sixty acres per second foot." It is declared by counsel, and it appears to be true, that this system, as it is described and delineated on the maps which are a part of the plan as prepared, was designed to serve all of the lands of the district, but it does not appear that it was capable of doing so or, at any rate, that it was practicable to do so. Counsel for respondents in their brief also assert, as illustrating the asserted arbitrary method whereby the board of trustees attempt in the plan of 1921 to dispose of the water to be used under permit No. 388, and to fix the duty of said water, that there was no limit made in the permit to the area in the district to be served thereunder and that the water derived by virtue of such permit was to be used for the purpose of irrigating through the Wilkins Slough system all of the lands in the district or such of them as might require the same. Thus the specific objection to the plan is presented and it is hence argued that it is beyond the power of the board definitely to establish the duty of water or likewise to establish a particular area which should be irrigated from the source referred

to. The plan is similarly objected to in other particulars than the one here considered. But the objection which we have particularly explained is sufficient to illustrate the specific reasons upon which the respondents claim that the plan is invalid.

[7] We are not required to determine in this case the question whether, in exercising the right to establish in the plan the particular quantity of water and the source and duty thereof which a particular area shall be entitled to, the board of trustees exceeded its lawful power or authority. But, even if it were necessary to concede that it did, this, in our opinion, would not have the effect of invalidating the entire plan. If the fixing of particular quantities and the duty of water with reference to particular tracts of land in the district was beyond the power of the board of trustees, it would be clear that the exercise of that power by said board would involve a matter entirely foreign to the purpose for which the plan was to be established and could and would be regarded as wholly surplusage. [8] And, indeed, if it were true that the action of the board in this particular was in excess of its power (a proposition which, we desire to make plain, we do not decide), any attempt on the part of the board to apply the scheme so adopted to the detriment or injury of the rights of any land owner—that is to say, if by attempting to carry out the scheme as so established, any area or portion of the lands in the district is deprived of its just and necessary proportion of the water available to the district for its purposes—then the land owners thus aggrieved may prevent such wrong by an appropriate action in the courts. In other words, a remedy is readily available to the land owners of the district to prevent the unjust distribution of the water or an unjust imposition of the duty of the water by the board of trustees, even though it be true that the latter, in its plan of 1921, has illegally, or even legally, definitely determined the particular areas which shall receive particular water and has likewise fixed the duty of the water. And we may add that such a course on the part of the land owners, should they find it necessary to adopt it, is to be preferred over any attempt at the determination of the question here, inasmuch as it would involve a direct attack upon the right of the board

so to attempt to control the distribution of the water and the ditches and the canals in a particular way by express provision in the plan. At all events, we are firmly of the opinion that the power thus exercised by the board of trustees, even if *ultra vires,* does not amount to such a defect in the plan as to justify us in holding that the entire plan is thereby vitiated and rendered void. The board may always be required to distribute the water according to the just rights of the land owners by an appropriate proceeding in court at the behest of the latter.

The conclusion from the foregoing considerations necessarily is that, the plans of 1917 and 1920 having been superseded by the plan of 1921, and the assessment here concerned having been based and made on the plans thus superseded, the assessment so made is null and void and, therefore, the board of supervisors of Colusa County is without jurisdiction to hear, entertain, and determine any proceeding or proceedings with reference to said assessment.

In accordance with the foregoing views the writ herein prayed for will be, and the same is hereby, ordered to be issued out of this court, directed to the respondents, commanding them to desist from taking any further proceeding affecting or from hearing or equalizing the assessment lists in question.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 17, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.